IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 36162**

| | | |
|---|---|---|
| KGF DEVELOPMENT, LLC, | ) | |
| | ) | |
|    Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Boise, June 2010 Term |
| CITY OF KETCHUM, a municipal | ) | |
| corporation of the State of Idaho, | ) | 2010 Opinion No. 92 |
| | ) | |
|    Defendant-Respondent, | ) | Filed: July 28, 2010 |
| | ) | |
| and | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| 260 FIRST, LLC, | ) | |
| | ) | |
|    Intervenor-Respondent. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Honorable Robert J. Elgee, District Judge.

The judgment of the district court is <u>reversed</u>.

Haemmerle & Haemmerle, PLLC, Hailey, for appellant. Fritz X. Haemmerle argued.

Moore Smith Buxton & Turke, Chtd., Boise, for respondent. Paul J. Fitzer argued.

Lawson Laski Clark & Pogue, PLLC, Ketchum, for intervenor. Michael D. Pogue argued.

_____

J. JONES, Justice.

KGF Development, LLC, appeals the district court's judgment in favor of the City of Ketchum. We reverse.

## I.
### Factual and Procedural History

KGF owns units C1 through C12, 2, 4, 6, and 7 of the Copper Ridge Condominiums, which are located in the City of Ketchum (the City). Copper Ridge was built and developed with

west-facing windows in its penthouse units in order to provide views of Mount Baldy. The maximum height for a building in the area where Copper Ridge was constructed was 40 feet. The penthouse units were expected to sell for around $3 million. KGF alleges that one of the major selling points of the penthouses was the view of Mount Baldy.

On February 18, 2008, the City passed Ordinance No. 1034 (the Ordinance).[1] One of the goals of the Ordinance was to preserve various properties in the City based on factors including size, historic character, and neighborhood cohesiveness. The Ordinance allowed for the transfer of development rights[2] (TDR) pursuant to Idaho Code section 67-6515A, a provision of the Local Land Use Planning Act (LLUPA).[3] This was based on the city attorney's opinion that language in section 67-6515A, listing conditions for allowing the transfer of development rights, was not meant to be exhaustive. Under the Ordinance, development rights could be transferred from designated sending sites to the owners of receiving sites willing to purchase those rights in exchange for restrictions on future development of the sending site. I.C. § 67-6515A; Ketchum City Code § 17.64.010.J. The Ordinance designated twenty-two sites that the City deemed eligible sending sites. Ketchum City Code § 17.64.010.J.12. The purchase of development rights by a receiving site allows the construction of a fourth floor on a structure because the purchased rights allow for an increased floor area ratio, meaning that a building on a receiving site can exceed the existing height limitation of 40 feet. Ketchum City Code § 17.64.010.J.7. Under the Ordinance, 260 First obtained approval to construct a four-story building, 50 feet in height, on its property located to the west of Copper Ridge. The proposed building, if constructed, will

---

[1] Ordinance No. 1034 is the successor of Ordinance No. 1005. KGF successfully challenged Ordinance No. 1005, which also sought to allow for the transfer of development rights, in Blaine County Case No. 07-250. In that case, the district court ruled that the Ordinance No. 1005 was void due to faulty notice. While that case was pending, the City adopted Ordinance No. 1034.

[2] The transfer of development rights is an incentive to keep owners of designated properties from further developing their land. Under a TDR ordinance or statute, real property chosen for preservation is designated as a sending site. This allows the owner of the sending site to sever development rights from the parcel and sell them to the owner of a designated receiving site. A receiving site is a parcel of real property that is made eligible for further development through the purchase of development rights from a sending site. Under the Ordinance, purchasing development rights allows the owner of the receiving site to build a structure with an increased floor area ratio, meaning that the structure is allowed to exceed existing zoning standards governing the maximum height of buildings.

[3] Although KGF's complaint claims that the Ordinance was adopted pursuant to the Preservation of Historic Sites Act, Idaho Code sections 67-4601 through 4619, there is no mention of that provision in the Ordinance itself. Ketchum City Ordinance No. 1034. 260 First, the intervenor, argues that the City had authority to enact the Ordinance under the Preservation of Historic Sites Act.

2

obstruct the view of Mount Baldy from KGF's penthouses, which has allegedly caused it to lose sales and forced it to lower sale prices.

KGF filed suit against the City, seeking a declaratory judgment that the Ordinance was void because it was not properly enacted under either Idaho Code section 67-6515A or the Preservation of Historic Sites Act (Preservation Act) and because it violated the uniformity requirement of Idaho Code section 67-6511. The City filed an answer and the parties subsequently stipulated that 260 First be allowed to intervene. KGF then moved for summary judgment. After extensive briefing and oral argument, the district court denied KGF's motion in an oral ruling, finding that the City was authorized to enact the Ordinance under its police power even if it was not explicitly authorized to do so by statute and that it did not violate the uniformity requirement. The district court, unsure of whether it had disposed of all the issues before it, issued a judgment dismissing the declaratory judgment action together with an I.R.C.P. 54(b) certificate.[4] KGF then appealed to this Court.

## II.
## Issues Presented on Appeal

The following issues are presented on appeal: (1) whether the Ordinance is valid under Idaho Code section 67-6515A; (2) whether the Ordinance is violative of LLUPA's uniformity requirement; and (3) whether either party is entitled to attorney fees on appeal.

## III.
## A. Standard of Review

When reviewing the grant of a motion for summary judgment,[5] we apply the same

---

[4] Although the district court stated that it was uncertain whether all issues were resolved by the summary judgment, the sole issue raised by the pleadings is the validity of the Ordinance. Thus, the Rule 54(b) certificate is superfluous.

[5] It is possible to interpret the district court ruling not only to be a denial of KGF's motion for summary judgment, but also a sua sponte grant of summary judgment to the City and 260 First. This Court has held that:

> "Summary judgment may be rendered for any party, not just the moving party, on any or all the causes of action involved, under the rule of civil procedure" thus allowing trial courts flexibility in determining the form of relief granted in summary judgment orders.

> The district court may grant summary judgment to a non-moving party even if the party has not filed its own motion with the court. A motion for summary judgment allows the court to rule on the issues placed before it as a matter of law; the moving party runs the risk that the court will find against it, as in this case.

*Harwood v. Talbert*, 136 Idaho 672, 677, 39 P.3d 612, 617 (2001) (citations omitted). This appears to be the understanding of the parties, as KGF's notice of appeal states that it appeals from "the [c]ourt's Decision granting summary judgment on January 12, 2009, and the resulting Judgment dated January 28, 2009, entered in accordance

3

standard used by the district court in ruling on the motion. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). "Summary judgment is properly granted when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Idaho R. Civ. P. 56(c)). The burden of demonstrating the absence of a genuine issue of material fact is on the moving party. *Id.*

We exercise free review over matters of statutory interpretation. *State v. Doe*, 147 Idaho 326, 327, 208 P.3d 730, 731 (2009). The purpose of statutory interpretation is to ascertain and "give effect to legislative intent." *Id.* at 328, 208 P.3d at 732. Statutory interpretation begins with the literal words of a statute, which are the best guide to determining legislative intent. *Id.* The words of a statute should be given their plain meaning, unless a contrary legislative purpose is expressed or the plain meaning creates an absurd result. *Id.* If the words of the statute are subject to more than one meaning, it is ambiguous and we must construe the statute "to mean what the legislature intended it to mean. To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *Id.* (quoting *Hayden Lake Fire Protection Dist. v. Alcorn,* 141 Idaho 388, 398–99, 111 P.3d 73, 83–84 (2005)).

### B. LLUPA Authorization

KGF argues that the district court erred in entering judgment against it because the Ordinance does not fulfill any of the conditions for allowing TDRs under Idaho Code section 67-6515A. The City and 260 First argue that both the language and legislative history of this LLUPA provision give the City broad authority to protect "significant resources," which include the historic properties designated as sending sites by the Ordinance.

The language used in section 67-6515A does not indicate that the statute is intended to allow for the protection of historic properties. The relevant portion of Idaho Code section 67-6515A provides:

> (1) Any city or county governing body may, by ordinance, create development rights and establish procedures authorizing landowners to voluntarily transfer said development rights subject to:

---

with the [d]istrict [c]ourt's Decision." The notice of appeal also states, as an issue on appeal, "[w]hether the trial court erred in denying Plaintiff/Appellant's motion for summary judgment and granting summary judgment to Respondents." Therefore, the summary judgment will be viewed as having been granted in favor of the City and 260 First.

(a) Such conditions as the governing body shall determine to fulfill the goals of the city or county *to preserve open space, protect wildlife habitat and critical areas, and enhance and maintain the rural character of lands with contiguity to agricultural lands* suitable for long-range farming and ranching operations; and

(b) Voluntary acceptance by the landowner of the development rights and any land use restrictions conditional to such acceptance.

I.C. § 67-6515A(1) (emphasis added). While the respondents argue that this language is not preclusive, their argument is not supported by the statute's plain language.

The plain language of LLUPA does not allow it to be used to enact a TDR ordinance for historic preservation purposes. "It is a universally recognized rule of the construction that, where a constitution or statute specifies certain things, the designation of such things excludes all others," a maxim commonly known as *expressio unius est exclusio alterius. Local 1494 of Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978) (quoting *Peck v. State*, 63 Idaho 375, 380, 120 P.2d 820, 822 (1941)).

Idaho Code section 67-6515A(1)(a) does not use "including" or some similar term to indicate that development-rights transfers may be authorized for any specific goal of the municipality beyond those listed. Instead, section 67-6515A provides a specific and exhaustive list of the interests that will justify the enactment of a TDR ordinance. The plain language of the statute evidences an intent to preserve rural values, i.e. to preserve open spaces, wildlife habitat and critical areas, or agricultural land.[6]

---

[6] While not necessary to our decision, it might be noted that the legislative history of section 67-6515A does not support the City's contention that the section applies to historic properties. While the respondents argue that the legislative history allows the protection of all "significant land resources," there is no indication anywhere in the legislative history that significant land resources includes preservation of historic buildings and sites. The legislative history does provide that the focus of the statute is on the preservation of "significant land resources":

This legislation would allow any county or city governing body to establish a program in which the transfer of development rights may be utilized as an option to protect *significant land resources* . . . . The governing body determines the amounts and conditions of such [transfers of development rights] to fulfill the goals of the county or city pertaining to *preservation and conservation of significant resources*.

Statement of Purpose, H.B. 323, 55th Leg., 1st Reg. Sess. (Idaho 1999); *Hearing on H.B. 323 Before the S. Comm. on Local Government and Taxation*, 1999 Leg. 55th Sess. (Idaho 1999) (statement of Rep. Wendy Jaquet). While none of the explicit statements made in the committee minutes indicate what "significant resources" are, this function is served by the bill summary that was provided to committee members. It provides:

While the City is attempting to preserve a historic aspect of its landscape, it is not doing so under the terms of section 67-6515A. The record demonstrates that the City's express intention in enacting the Ordinance was to revitalize the downtown corridor while preserving historic buildings within that corridor. Because the City's focus is on buildings within the City itself, an urban focus, it is not acting in the rural context envisioned by the Legislature.[7] The urban focus is evident from the statement of purpose of the larger code section in which the Ordinance was codified. It provides:

> Purpose: The purpose of the CC community core district is to promote a compact and cohesive center of commerce and culture, to promote an attractive and safe pedestrian environment which includes sidewalks, gathering spaces, streetscape amenities and landscaping, to retain the unique small town scale and character and to encourage buildings which respect Ketchum's historical and geographic context while providing diversity. The regulations of this chapter are *intended to facilitate the implementation of the city's comprehensive plan and the Ketchum downtown master plan*. Compatible mixed uses including retail, office, residential and cultural uses are encouraged. *Commercial uses are concentrated in the [community core] district* which is consistent with the city's comprehensive plan and the downtown master plan.

Ketchum City Code § 17.64.010.A (emphasis added). Further, neither the Ordinance nor the

---

> The objectives of a [transfer of development rights] program are to preserve agricultural land and maintain Idaho's historic rural farming and ranching landscapes, habitat, and open space.
> . . . .
> - HB 323 is enabling legislation – It is a tool for land owners and an option for communities that want to maintain rural landscapes, but need to provide an economic incentive for private property owners.

*Exhibit to the Record of Hearing on H.B. 323 Before the S. Comm. on Local Government and Taxation*, 1999 Leg. 55th Sess. (Idaho 1999).

[7] The Ordinance does allow for severance of development rights from open space or public parks. *See* Ketchum City Code § 17.64.010.J.g & h. However, the Ordinance speaks largely in terms of buildings and does not apply to vacant lots. *See* Ketchum City Code § 17.64.010.J. In fact, the term "open space" is defined as:

> [a]n area of a building located and oriented to encourage communal gathering and activity, to provide views of cultural resources and natural resources, and/or to preserve and protect mature and healthy trees and landscaping on the site. These spaces are open for use by all occupants and users of a building. Outdoor open spaces located on the ground floor are typically also open to the public.

Ketchum City Code § 17.08.010. As indicated by the legislative history of section 67-6515A, this definition is inconsistent with what the Legislature intended by its use of the term "open space" because the legislators spoke in terms of the protection of wildlands and rural areas. The only portion of the Ordinance that even comes close to what was envisioned by the Legislature is the portion that allows a transfer of development rights for parklands. *See* Ketchum City Code § 17.64.010.J.5.g & h.

minutes of the committee meeting leading up to its adoption indicate any intention to preserve the rural character of the City. Any argument that rural or wildland character is preserved by the Ordinance is disingenuous because the Ordinance, as indicated by its statement of purpose, is solely focused on the City's community core district—a district that constitutes the urban center of the City. Accordingly, we find that the Ordinance was not validly enacted under Idaho Code section 67-6515A.

### C. LLUPA Uniformity

KGF argues, and we agree, that the Ordinance conflicts with the uniformity requirement of LLUPA and is thus in violation of Article XII, § 2 of the Idaho Constitution, which prohibits cities from enacting laws in conflict with the State's general laws. The uniformity requirement is contained in Idaho Code section 67-6511 and it provides, in relevant part:

> Within a zoning district, the governing board shall where appropriate, establish standards to regulate and restrict the height, number of stories, size, construction, reconstruction, alteration, repair or use of buildings and structures; percentage of lot occupancy, size of courts, yards, and open spaces; density of population; and the location and use of buildings and structures. *All standards shall be uniform for each class or kind of buildings throughout each district….* (emphasis added).

Although we hold that the Ordinance is not authorized by Idaho Code section 67-6515A, the definitions in that section are informative as to the type of TDRs that the Legislature envisioned to be consistent with the uniformity requirement. Idaho Code section 67-6515A(8)(d) defines TDR as follows: "'Transfer of development rights' shall mean the process by which development rights are transferred from one (1) lot, parcel or area of land in any sending area to another lot, parcel or area of land in one (1) or more receiving areas." Consistent with Idaho Code section 67-6511's requirement that standards shall "be uniform for each class or kind of buildings throughout each district," this definition suggests that the owner of a sending area is foregoing the right to develop property in a certain fashion authorized by the relevant zoning ordinances in order to permit the owner of the receiving area to develop that property in a like fashion.

This common-sense reading of the statute is reinforced by the definition of "development rights," which are defined by Idaho Code section 67-6515A(8) as follows: "the rights permitted to a lot, parcel or area of land under a zoning or other ordinance respecting permissible use, area,

7

density, bulk or height of improvements." In other words, "development rights" that may be transferred are those that are possessed by the transferring party.

The difficulty with the Ordinance is simply this: the "rights" that may be transferred under the Ordinance are not "rights" possessed by the sending site. Rather, the "development rights" defined by the Ordinance are synthetic creations authorizing sending site owners to transfer "rights" superior to the development rights they possess. That is, the property owners of sending sites do not have the right under the Ketchum scheme to develop the sending sites in a fashion permitted by the receiving sites. The effect of the TDR scheme created by the City is to allow receiving site property owners to purchase limited exemptions from the City's zoning regulations. This conflicts with the uniformity requirement of Idaho Code section 67-6511.

Ketchum City Code § 17.64.010 effectively limits the height of buildings in the City to three stories, except for hotels, community housing and planned unit developments. The findings contained in the Ordinance expressly recognize that "Four story buildings will be allowed with the purchase of TDRs." The findings minimize the impact of this deviation, explaining that "[b]uildings which employ TDRs to obtain additional height and square footage will be only slightly larger [than] neighboring buildings and should not appear oversized." It is evident the City contemplates that TDRs will be used to avoid the existing height restrictions, as the "Receiving Site Regulations" provide that "Receiving Sites shall include properties in the City of Ketchum where additional building height has been determined by the City Council to be advantageous to the City…." These regulations further provide that "[a] fourth floor may only be constructed on a designated receiving site and only through the transfer of development rights, except as provided for hotels." (Ketchum City Code § 17.64.010(I)(1) provides: "Hotels may build a fourth floor anywhere in designated receiving areas….") In essence, the Ordinance purports to convert horizontal development rights attached to sending sites into vertical development rights when transferred to receiving sites.[8]

_____

[8] The Ordinance essentially grants a blanket exemption for the receiving sites from the three-story height restriction in section 17.64.010 of the City Code. It is true that a property owner could obtain relief from the height restriction without the benefit of the Ordinance by seeking a variance but would need to make "a showing of undue hardship because of characteristics of the site and that the variance is not in conflict with the public interest." Idaho Code § 67-6516; Ketchum City Code § 17.148.020. Interestingly, section 17.148.040 of the City Code provides that a variance is not transferrable from one parcel of land to another. In order to get a variance, an applicant must go through a hearing process where adjoining property owners have an opportunity to participate and object. The City does not indicate how the Ordinance is able to circumvent the three-story building limitation and to avoid the rigorous requirement for obtaining a variance, without coming into conflict with these City Code provisions. Nor

The Ordinance clearly reflects that sending sites may not construct buildings that would be permitted on a receiving site, with or without purchase of TDRs. For example, Ketchum City Code § 17.64.010(I)(2) states: "Without exception, hotels cannot build fourth or fifth floors in designated sending areas…." A sending site is prohibited from acquiring TDRs. Ketchum City Code § 17.64.010(J)(7)(b)(1). Finally, Ketchum City Code § 17.64.010(J)(7)(c) provides:

> Affixing development rights through the process set forth herein allows the construction of a specified amount of floor area square footage on a fourth floor on a designated receiving site. *A fourth floor may only be constructed on a designated receiving site and only through the transfer of development rights,* except as provided for hotels. (emphasis added)

After careful review, there is one inescapable conclusion as to the purpose and effect of the Ordinance: it is designed to permit purchasers of TDRs to construct buildings taller than would otherwise be permitted. This conflicts with the uniformity requirement of Idaho Code section 67-6511, which of course is a general law of the State of Idaho. Because of such conflict, we must invalidate the Ordinance under Article XII, § 2 of the Idaho Constitution. Having done so, we need not consider the issues presented by the parties relative to the Preservation Act.

### D. Attorney Fees

The City and KGF seek attorney fees on appeal under Idaho Code section 12-117. This Court will award attorney fees under section 12-117 when it finds that the non-prevailing party acted without basis in law or fact. *Giltner Dairy, L.L.C. v. Jerome County*, 145 Idaho 630, 633, 181 P.3d 1238, 1241 (2008). Under this standard, the City is not entitled to fees because it did not prevail. We also find that KGF is not entitled to attorney fees in this matter. The City has not acted without basis in fact or law, as we have not previously addressed the issues presented in this appeal.[9] Accordingly, neither party is entitled to attorney fees on appeal.

---

does it explain how the horizontal development rights of sending sites can be converted into vertical developments rights on receiving sites.

[9] Even had the City acted without a basis in fact or law, the current version of Idaho Code section 12-117 may not allow for the award of fees, as we noted without deciding in *Lake CDA Investments, LLC v. Idaho Department of Lands*, No. 36162, 2010 WL 2179220, at *13, fn.6 (Idaho June 2, 2010).

## IV.

Because we find the Ordinance to be void, the district court's judgment is reversed. KGF is awarded its costs on appeal.

Chief Justice EISMANN and Justices BURDICK, HORTON and Pro Tem Justice KIDWELL CONCUR.