# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 37547

| | | |
|---|---|---|
| RONALD R. MC CANN, | ) | |
| | ) | |
| Plaintiff/Appellant/Cross-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM V. MC CANN, JR., and GARY E. MEISNER, individually, as a director of MC CANN RANCH & LIVESTOCK COMPANY, and as a shareholder of MC CANN RANCH & LIVESTOCK, INC., in his capacity of the WILLIAM V. MC CANN, SR., Stock Trust, | ) ) ) ) ) ) ) ) | Moscow, September 2011<br><br>2012 Opinion No. 13<br><br>Filed: January 10, 2012<br><br>Stephen W. Kenyon, Clerk |
| Defendants/Respondents/Cross-Appellants, | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| MC CANN RANCH & LIVESTOCK COMPANY, INC., | ) ) | |
| | ) | |
| Nominal Defendant/Respondent/Cross-Appellant. | ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. George D. Carey, Senior District Judge.

District court order granting summary judgment to Respondents, <u>reversed</u> and <u>remanded.</u>

Schwam Law Firm, Moscow, for appellant. Andrew M. Schwam argued.

Esser & Sandberg, PLLC, Pullman, WA, Timothy H. Esser, for appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent William V. McCann, Jr.

Michael E. McNichols, Lewiston, for respondent Gary E. Meisner. Michael E. McNichols argued.

Charles F. McDevitt, Boise, for respondent McCann Ranch and Livestock Company.

BURDICK, Justice

This case involves an ongoing dispute between Ron McCann (Ron) and his brother William McCann, Jr. (Bill) concerning the operation of McCann Ranch & Livestock Company, Inc. (Corporation), a closely-held corporation created by their father, William McCann, Sr. (William, Sr.). In 1997, William, Sr.'s shares passed to a trust set up to benefit his wife Gertrude McCann (Gertrude), with Gary Meisner (Meisner) as trustee. In 2008, Ron filed suit against Bill, the Corporation and Meisner (collectively, Respondents) alleging a breach of fiduciary duties and seeking equitable relief or, if necessary, the dissolution of the corporation under I.C. § 30-1-1430. The district court granted summary judgment for the Respondents.

Ron now appeals, arguing that the district court erred in characterizing his claims as derivative and in finding that he failed to satisfy the elements of I.C. § 30-1-1430(2)(b). Ron also argues that the court incorrectly limited the scope of discovery. Respondents cross-appeal, arguing that the district court erred in failing to award them attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the 1970s, Ron and Bill were each gifted 36.7% of the shares of the Corporation. The remaining shares were held by William, Sr. until they were transferred to a trust set up to benefit his wife, Gertrude. The trustee, Meisner, was given the power and discretion to vote the shares and, if necessary, redeem them to provide an income for Gertrude. Following Gertrude's death, her shares pass to Bill. Upon the death of William, Sr. in 1997, Bill became the President and CEO of the corporation.

The business relationship between Ron and the Respondents soured over the next few years.[1] In June 2000, Ron filed a complaint alleging derivative claims related to the activities of Bill and other directors of the corporation. The complaint alleged a breach of fiduciary duties, negligence by the directors, conversion of corporate property, self-dealing and conflict of interest transactions.[2] In response, the Respondents filed motions to dismiss for failure to comply with the written demand requirements for derivative actions in I.C. § 30-1-742. In August 2000, Ron

---

[1] After William, Sr.'s death: Bill's corporate salary increased from $48,000 per year to $144,000 per year, Ron was removed from the board of directors, and Ron has not been authorized to work for the corporation since.

[2] One of the allegations was that the Corporation was paying Gertrude a sizeable consultant fee even though Gertrude wasn't doing any consulting. Soon after commencement of litigation, the payments stopped and the Corporation resolved to investigate whether the payments were improper.

filed a motion to amend his complaint to more clearly include an individual, as opposed to derivative, action. On January 5, 2001, the district court denied the motion to amend and dismissed Ron's original claims with prejudice for failure to comply with I.C. § 30-1-742. Ron appealed to this Court, arguing that the district court: erred in dismissing the individual action; erred in its ruling on notice under I.C. § 30-1-742; and erred in the award of attorney fees and costs to Respondents. In its December 31, 2002 opinion (*McCann I*), this Court affirmed the decision of the district court. *McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002). Among its conclusions, this Court upheld the district court's determination that the causes of action in Ron's original complaint were derivative rather than individual in nature.

The corporate discord did not stop after *McCann I* was dismissed. On June 10, 2008, Ron filed the initial complaint in the present action. Ron alleged that the directors of the Corporation breached their fiduciary duty owed to him as a shareholder by engaging in a "squeeze-out" and that such injury is grounds for a direct action.[3] Ron's claims focused on his treatment by the Corporation, as well as financial transactions between the Corporation and Gertrude.[4] Ron prayed for equitable relief or, if necessary, dissolution of the corporation under I.C. § 30-1-1430(2)(b). Respondents filed a motion to dismiss on July 16, 2008, arguing that res judicata bars the claims and that the complaint must be dismissed for failure to comply with the written demand requirements in I.C. § 30-1-742. On September 17, 2008, Ron replied that since his current claims are individual in nature, and his previous claims were derivative, res judicata does not apply. Ron filed an amended complaint on October 15, 2008, to which the Respondents answered on May 11, 2009 after the resolution of their motion to dismiss.

The district court issued a memorandum opinion and order on Respondents' motion to dismiss and Ron's motion to compel discovery on March 4, 2009. The district court granted partial summary judgment on the breach of fiduciary duties claim, holding that the claim is derivative and fails to meet the written demand requirements of I.C. § 30-1-742. The court

---

[3]Among the allegations; the Corporation declared a dividend only three times, providing Ron with a total of $25,676 in dividends; in 2007 Bill's salary increased to $160,000; the Corporation paid Gertrude twelve years back-rent for a shed on her property; the Corporation bought Gertrude's home in 2000, subject to her retained life estate and pays Gertrude for time and expenses incurred in maintaining and repairing the property at a rate of $1,000 per month.

[4] William, Sr. and Gertrude had a history of paying personal expenses with corporate funds. After being audited in the late 1980s any money used for personal expenses have been accounted for as "receivables." In 2006, Gertrude presented the Corporation with a promissory note for $165,341 related to personal expenses that had been paid by the Corporation. By 2008, that receivable has grown to $198,945. Ron claims these payments served no corporate purpose and that the debt will never be recovered.

3

denied summary judgment on the dissolution claim because Ron made the factual allegations necessary to assert the claim. As for discovery, "[i]n addressing new claims on the merits, the court anticipates that it will be considering events that took place after January 5, 2001." The memorandum also excused the Respondents from responding to interrogatories concerning events that predated the dismissal of *McCann I*.

After the district court's memorandum and order, Ron filed a motion for reconsideration of the dismissed breach of fiduciary duty claim. Respondents filed a motion in opposition to reconsideration, and a cross motion for reconsideration of the denial to dismiss the dissolution claim. On May 15, 2009, the district court entered an order denying both motions for reconsideration. Also in the order was a denial of Respondents' motion filed on April 30, 2009 to bifurcate the trial.

The next round of motions dealt with lingering discovery issues. Although the district court limited discovery to events that occurred after January 5, 2001, Ron sought to compel pre-2001 documents that provided context for financial transactions occurring post-2001. Respondents filed a motion in opposition and for a protective order limiting all discovery to events after January 5, 2001. On August 31, 2009, the district court filed a second order concerning discovery that denied Ron's motion to compel on the grounds that Ron's inquiry did not appear reasonably calculated to lead to the discovery of admissible evidence.

After discovery, Ron moved to amend his amended complaint to include a third cause of action. The third cause of action was to be a derivative claim on behalf of the Corporation, using many of the same facts as the previously dismissed breach of fiduciary duty claim. On November 12, 2009, the district court ruled that Ron again failed to comply with the requirements of I.C. § 30-1-742 and denied the motion to amend.

On January 15, 2010, Respondents moved for summary judgment on the sole remaining claim, the corporate dissolution claim, arguing that Ron failed to show "irreparable harm to the corporation." On March 3, 2010, the district court issued its Memorandum and Order Concerning Various Motions. The court granted summary judgment, holding that Ron failed to show "irreparable harm to the corporation" and thus failed to prove the statutory requirements of I.C. § 30-1-1430(2)(b). The district court entered a final judgment on March 5, 2010.

Pursuant to the final judgment, Respondents filed a joint memorandum of costs and attorney fees, which Ron disputed. On May 18, 2010, the district court filed an order concerning

4

costs that disallowed the discretionary costs and declined to award the attorney fees sought by the Respondents. A supplemental judgment was filed concurrently with the order.

Ron filed a notice of appeal on March 18, 2010. Respondents filed notices of cross-appeal individually, by Meisner on June 30, 2010, the Corporation on July 1, 2010, and Bill on July 2, 2010.

## II. ANALYSIS

**A. Count I, the breach of fiduciary duty claim, is an individual claim that was improperly dismissed on summary judgment as a derivative action filed in violation of I.C. § 30-1-742.**

In its March 4, 2009 Memorandum and Order, the district court held that Ron's breach of fiduciary duty claim was not an individual action, but rather a derivative action brought by a shareholder on behalf of the corporation. Because Ron brought the action before giving proper written notice to the Corporation, the district dismissed the claim for violating I.C. § 30-1-742. Idaho Code § 30-1-742 provides:

> No shareholder may commence a derivative proceeding until: (1) A written demand has been made upon the corporation to take suitable action; and (2) Ninety (90) days expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

On appeal, Ron argues that his claims are individual, thus not governed by the demand statute, and that the district court erred in dismissing them as derivative.

1. Standard of Review

> Where a motion to dismiss for failure to state a claim upon which relief can be granted is supported by information outside of the pleadings, the motion is treated as a motion for summary judgment. The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion. Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

*McCann I,* 138 Idaho at 232, 61 P.3d at 589 (internal citations omitted).

2. The district court erred when it labeled Count I as derivative.

The distinction between an individual and a derivative action is an essential starting point. In *McCann I*, this Court wrote that:

> A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.

5

*Id.* at 233, 61 P.3d at 590 (quoting 19 AM.JUR.2D *Corporations* § 2250, 151–52 (1986)).

In contrast, an individual action requires injury specific to the shareholder.

[I]t is generally held that a stockholder may maintain an action in his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

*Id*. (quoting 19 AM.JUR.2D *Corporations* § 2249, 151 (1986)).

Here, Ron alleges that Respondents (the Corporation and its directors), breached the fiduciary duty owed to Ron by engaging in a squeeze-out. Squeeze-outs, sometimes called freeze-outs, are actions taken by the controlling shareholders to deprive a minority shareholder of his interest in the business or a fair return on his investment. *Balvik v. Sylvester*, 411 N.W.2d 383, 386 (N.D. 1987). Because of the predicament in which minority shareholders in a close corporation are placed by a squeeze-out situation, courts have analyzed alleged "oppressive" conduct by those in control in terms of "fiduciary duties" owed by the majority shareholders to the minority and the "reasonable expectations" held by the minority shareholders in committing their capital and labor to the particular enterprise. *Id*. at 387.

Idaho case law is clear on the fiduciary duty owed by directors. "As fiduciaries, corporate directors are bound to exercise the utmost good faith in managing the corporation. However, the 'business judgment rule' immunizes the good faith acts of directors when the directors are acting within the powers of the corporation and within the exercise of their honest business judgment." *Steelman v. Mallory*, 110 Idaho 510, 513, 716 P.2d 1282, 1285 (1986) (internal citations omitted). "In Idaho a director has a fiduciary responsibility to both the corporation and to shareholders." *Weatherby v. Weatherby Lumber Co*., 94 Idaho 504, 506, 492 P.2d 43, 45 (1972). More specifically, "'[t]hat the directors of a closely held corporation owe a fiduciary duty to the minority shareholders is well recognized.'" *Jenkins v. Jenkins*, 138 Idaho 424, 428, 64 P.3d 953, 957 (2003) (quoting *Steelman*, 110 Idaho at 513, 716 P.2d at 1285).

In *Steelman*, a shareholder of a closely-held corporation filed suit against the two controlling shareholders alleging a breach of fiduciary duty. An individual action was allowed where the directors breached their fiduciary duty by usurping an opportunity that existed and would have been performed by the corporation but for a disagreement amongst the directors. *Steelman*, 110 Idaho at 513–14, 716 P.2d at 1285–86. This Court held that in a closely-held

6

corporation, the corporate directors owe a fiduciary duty to one another, to the corporation and to the shareholders, including the minority shareholders. *Id.* at 513, 716 P.2d at 1285. "Since Mallory and Jensen, as directors in this small closely held corporation, had a fiduciary duty to Steelman, as a minority shareholder, we cannot agree with appellants' contention that this case should have been dismissed because it is a 'direct action' rather than a shareholder's derivative suit." *Id.*

The holding in *Steelman* is consistent with holdings from other states and legal authorities.

> A well-recognized exception to the rule that a shareholder must bring a derivative action for claims alleging injury to the corporation is that in a closely held corporation a minority shareholder may bring a direct action, rather than a derivative action, if the shareholder alleges harm to himself distinct from that suffered by other shareholders of the corporation or breach of a special duty owed by the defendant to the shareholder. *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881 (Iowa 1983); *see also Thomas v. Dickson*, 301 S.E.2d 49 (Ga. 1983); *Russell v. First York Savings Co.,* 352 N.W.2d 871 (Neb. 1984), *overruled on other grounds in Van Pelt v. Greathouse*, 364 N.W.2d 14 (Neb. 1985); *Crosby v. Beam,* 548 N.E.2d 217 (Ohio 1989);[5] *Horizon House-Microwave, Inc. v. Bazzy,* 486 N.E.2d 70 (Mass. App. Ct. 1985).

*Schumacher v. Schumacher*, 469 N.W.2d 793, 798 (N.D. 1991); *see also Action in Own Name by Shareholder of Closely Held Corporation*, 10 A.L.R. 6th 293 § 13 (2006).

Typically, relief has been granted in non-fraud oppression cases where the majority has engaged in squeeze-out conduct. *See Balvik*, 411 N.W.2d at 387; *Landstrom v. Shaver*, 561 N.W.2d 1, 10 (S.D. 1997). The majority shareholders can apply numerous means to accomplish the squeeze-out.

> [H]olders of a majority of the voting shares in a corporation, through their ability to elect and control a majority of the directors and to determine the outcome of shareholders' votes on other matters, have tremendous power to use a great variety of devices or modes of operation to benefit themselves at the expense of minority shareholders. Here are a few illustrations. The squeezers may cut off the flow of income to the minority by refusing to declare dividends or they may deprive minority shareholders of corporate offices and of employment by the company. At the same time, the squeezers can protect their own income stream from the business by

---

[5]  Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent a legitimate business purpose, is actionable. Where such a breach occurs, the minority shareholder is individually harmed. When such harm can be construed to be individual in nature, then a suit by a minority shareholder against the offending majority or controlling shareholders may proceed as a direct action. *Crosby,* 548 N.E.2d at 221.

exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, by high rental payments for property the corporation leases from majority shareholders, or by unreasonable payments under contracts between the corporation and majority shareholders.

*F. Hodge O'Neal & Robert B. Thompson, Oppression of Minority Shareholders and LLC Members* § 3.2 (Rev. 2nd ed. 2004); s*ee also* Note, *Freezing Out Minority Shareholders,* 74 Harv.L.Rev. 1630 (1961).

Ron's allegations resemble that list. Ron alleges that the Respondents engaged in a squeeze-out by: (1) not paying dividends despite sufficient cash flow; (2) not providing corporate employment to Ron; (3) not providing board membership to Ron; (4) authorizing phony transactions to Gertrude to avoid any benefit to Ron; (5) frustrating the intent of the founder of the Corporation to provide an actual financial benefit to Ron; and (6) making management decisions that allow all of the cash flow to be obtained solely for the benefit of Bill and Gertrude at the expense of Ron.

Dennis Reinstein is an accountant who provided expert testimony for Ron, and whose deposition lays out the ways in which the Corporation attempted to provide for Gertrude. As Bill noted in his deposition, the Corporation purchased Gertrude's house because "she needed the money." Gertrude was, for a time, employed as a consultant after the death of William, Sr. The Corporation also pays her utility and automobile expenses and tracks the total in the corporate books as an account receivable. Gertrude's account receivable had a balance of $198,945 as of December 31, 2008. Reinstein states that $622,306 went from the Corporation to Gertrude between January 1, 2001 and May 20, 2009. This would represent roughly 75% of the net corporate income for the time frame ($851,487.60 total). By 2007, the Corporation completed payments on Gertrude's home. Also in 2007, Bill's salary increased to $160,000, from $144,000. Soon after, Bill and his wife Lori began depositing $1,500 per month into Gertrude's checking account.

In its analysis of the claim, the district court relied on this Court's decision in *McCann I*. "The first cause of action, for breach of fiduciary duties, conceptually is more difficult to resolve. If there had been no *McCann I* decision, I would be inclined to follow the holding in *Steelman v. Mallory* and conclude that [Ron]'s claim for breach of fiduciary duties was personal to him and not derivative."

8

As in *McCann I*, this Court found that the claims brought by Ron were derivative and that an individual action was unavailable. 138 Idaho at 233–34, 61 P.3d at 590–91. Although this Court addressed whether the claim was derivative or individual, the actual wording and substance of the claim made it derivative. Ron tried to amend his complaint to more clearly state individual claims, but his motion to amend was denied. Additionally, the Court's explanation on individual actions was dicta, as the holding focused on the first derivative complaint and its dismissal for non-compliance with the notice requirements in I.C. § 30-1-742. *McCann I*, 138 Idaho at 236–37, 61 P.3d at 593–94. "This Court upholds the district court's determination that the causes of action alleged by Ron were derivative rather than individual in nature." *Id*. at 234, 61 P.3d at 591.

Like in *McCann I*, the more recent actions taken by the Respondents may appear derivative on the surface. The most obvious victim of the alleged phony transactions would be the corporate coffers. However, a look at the surrounding circumstances brings the potential harms to Ron into focus.

Many of the actions undertaken by the Corporation, in and of themselves, are legitimate uses of corporate power and discretion. Regardless of his ownership interest, Ron is not entitled to a seat on the board of directors. Nor is he entitled to corporate employment.[6] Nor is there evidence he is entitled to a dividend. By themselves, any payments from the Corporation do not harm Ron any more than they harm the other shareholders. However, they may be used as facts to support a squeeze-out. Each of these actions may fall under the business judgment rule, but those are issues of fact. Even if the business judgment rule applies, it is possible for courts to find such actions harmful if the end result could have been achieved with less injury to the minority shareholder. *See Wilkes v. Springside Nursing Home, Inc.*, 353 N.E.2d 657, 663 (Mass. 1976) ("If called on to settle a dispute, our courts must weigh the legitimate business purpose, if any, against the practicability of a less harmful alternative."). Also, the ownership structure of the Corporation requires an additional level of analysis that places these actions beyond the scope of the business judgment rule.

---

[6]However, "[s]hareholders in a close corporation usually expect employment and a meaningful role in management, as well as a return on the money paid for the shares. Further, their expectations often are complicated by family or other personal relationships within the corporation." *Robert B. Thompson*, *The Shareholder's Cause of Action for Oppression,* 48 Bus. Law. 699, 702 (1993).

Any corporate actions should be viewed in the context of William, Sr.'s will, which orders that all of Gertrude's shares pass to Bill upon her death. Here, the Corporation used corporate funds to make payments to Gertrude. Since the payments were going directly to pay Gertrude's expenses, she did not experience any harm from the transactions. On the contrary, the payments she received actually cost her less than the stock redemption allowed by William, Sr.'s will. [7] Rather than redeem stock whenever she needed money, she received payments and retained her ownership interest.

Likewise, Bill was not harmed by the payments made to Gertrude, and in the future his position enhanced, because of his eventual inheritance of Gertrude's shares. Even though value left the Corporation, these transactions are made in lieu of redeeming Gertrude's shares. Thus, the transactions preserve Bill's inheritance and the trustee's shares, which preserves the unbreakable majority vote of the two.

In this light, the actions of the Corporation and its directors have an effect on Ron above and beyond the effect of every other shareholder. Each of these transactions hurts Ron specifically. In this way, Ron's loss is analogous to the loss felt by Steelman. Both men were the only shareholders in a close corporation to experience an injury caused by the other shareholders. *Steelman*, 110 Idaho at 511–13, 716 P.2d at 1283–85 (In which the two other shareholders were usurping corporate opportunity, disproportionately harming Steelman).

The Corporation went to great lengths to provide Gertrude with the money she needed. However, all of these transactions could be avoided if Meisner redeemed shares when necessary. Any stock redemption would not have hurt Ron, as his percentage of ownership stake would have increased. [8] Since William, Sr.'s will contemplated an alternate and less harmful means of providing for Gertrude, it may be argued that the transactions were not made in good faith. At the same time, Ron lost his voice in corporate decisions, lost his corporate employment, and does

---

[7] William, Sr.'s Last Will and Testament states that:

> The Trustee is empowered to sell to the Corporation whatever shares of stock are necessary to enable my estate to pay the estate and inheritance taxes due at the time of my death. The Trustee shall vote the stock and it is my intention that such Trustee shall vote the stock so as to create an income insofar as possible for [Gertrude].

> So long as the Trust continues, the Trustee shall pay to or apply for the benefit of [Gertrude], so much of the income as Trustee in his discretion deems necessary for her support, care and maintenance. Any income not so distributed shall be accumulated and added to principal.

[8] If executed fully, the stock redemption would work against the controlling shareholders. Meisner would lose the ability to vote with Bill and Ron would ultimately have a 50% stake in the Corporation.

not receive a meaningful dividend. The transactions with Gertrude, coupled with the other aforementioned corporate actions, appear to be an attempt to marginalize and squeeze-out Ron.

As noted in *McCann I*, derivative and individual actions may both grow out of the same wrong. 138 Idaho at 233, 61 P.3d at 591. Taking all of Ron's allegations as true, there is a material question of fact as to whether the directors could be found to have engaged in a squeeze-out against Ron, causing him harm beyond every other shareholder. Since we held that the claims in *McCann I* were derivative in nature, *McCann I* does not apply here.

a. Equitable Remedy

Ron makes two prayers for equitable relief related to Count I. First, he requests a court-ordered buyout of his shares in the corporation for market value. In the alternative, he requests the creation of a spin-off, subsidiary corporation that consists of his 36.68% share in the current corporation.

In its Memorandum and Order Concerning Various Motions, the district court found that equitable forms of relief are "appropriate as somewhat less onerous methods of remedying corporate oppression."

> Nevertheless, as a condition of obtaining any type of equitable relief [Ron] must prove both the statutory requirements contained in I.C. Section 30-1-1430(2)(b). There must be proof that both elements of I.C. Section 30-1-1430(2)(b) were violated; only then is the court authorized to fashion relief, whether the relief is authorized by statute or by equitable principles.

These findings bring into question whether I.C. § 30-1-1430 abrogated any common law that would otherwise apply here. "Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law." *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 583, 513 P.2d 627, 635 (1973). As a general principle, "the rules of common law are not to be changed by doubtful implication. However, where the implication is obvious it cannot be ignored." *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011) (internal citations and quotations omitted).

Idaho Code section 30-1-1430 is part of the statutory framework of the Idaho Business Corporation Act, and dissolution is only one possible remedy under the act. I.C. §§ 30-1-101 to 30-1-1704. For example, where dissolution is sought, a court may issue injunctions, appoint a receiver or custodian *pendente lite*, or take other action to preserve corporate assets until a full hearing can he held. I.C. § 30-1-1431. Additionally, the act gives corporations or other

11

shareholders the option to purchase the shares of a petitioning shareholder in lieu of dissolution. I.C. § 30-1-1434. The corporation must give notice of this option within ten (10) days of the commencement of the action, I.C. § 30-1-1431(4), and the purchase must be made within ninety (90) days of the commencement or at such later time as the court in its discretion may allow, I.C. § 30-1-1434(2).

Idaho Code § 30-1-1430 does not contain any explicit language on whether it preserves or abrogates any common law. Some guidance can be found in the Idaho Reporter's comment that accompanies the statute, which states that the irreparable harm element "was added in the 1979 revision out of concern that shareholders have other protective actions such as derivative or class action suits and that dissolution should not be ordered solely on a showing of improper conduct, but should require a further showing of irreparable injury." The comment implies that the elements of I.C. § 30-1-1430(2)(b) apply specifically to corporate dissolution and leave open the possibility for other forms of remedy.

The statute lays out the guidelines and procedures for judicial dissolution of a corporation, but it neither clearly nor obviously implies a change in the common law except as the common law may pertain to corporate dissolution. As such, the elements of I.C. § 30-1-1430(2)(b) do not control the application of an equitable remedy not enumerated or implicated by the Idaho Business Corporation Act, in an action unrelated to corporate dissolution. *See Steelman*, 110 Idaho at 513–14, 716 P.2d at 1285–86.

It is well established in Idaho that equitable claims will not be considered when an adequate legal remedy is available. *Iron Eagle Dev., LLC v. Quality Design Systems, Inc.,* 138 Idaho 487, 492, 65 P.3d 509, 514 (2003). In *Steelman*, the corporation dissolved before the legal action commenced. 110 Idaho at 512, 716 P.2d at 1284. Likewise in *Jenkins*, the plaintiff was no longer a shareholder, so she could not bring an action under I.C. § 30-1-1430. 138 Idaho at 426, 64 P.3d at 955. In both circumstances, the dissolution statutes were unavailable.

Dissolution of a corporation is a drastic remedy that should be invoked with extreme caution and only when justice requires it. *Balvik*, 411 N.W.2d at 388. In some circumstances, dissolution may be a disproportionate and inadequate remedy.[9] If a district court finds a breach of fiduciary duty, and I.C. § 30-1-1430(2)(b) is not an adequate or available remedy, any

_____

[9] To provide guidance in such occasions, the Oregon Supreme Court listed appropriate, alternative remedies in *Baker v. Commercial Body Builders, Inc.* 507 P.2d 387, 395–96 (Or. 1973).

alternative remedy — including those used in *Steelman* — not found in the above referenced statutory framework can be utilized.

**B. The district court erred in granting summary judgment on Count II, the corporate dissolution claim, for failing to establish the necessary elements set forth in I.C. § 30-1-1430(2)(b).**

Ron appeals the summary judgment dismissal of Count II, alleging a variety of errors. He argues that the district court required him to prove elements not required under the statute. Additionally, Ron argues that he provided facts that can withstand the summary judgment motion and satisfy the elements of I.C. § 30-1-1430(2)(b). In his amended complaint, Ron made several allegations that he believes satisfy the statute. Among them: that Gertrude is unable to repay any debts to the Corporation; the transactions between Gertrude and the Corporation subject the Corporation to tax penalties. Respondents counter that Ron's alleged injury is personal and/or speculative and does not satisfy the statutory elements.

Idaho Code § 30-1-1430 states, *inter alia*:

The Idaho district court designated in section 30-1-1431(1), Idaho Code, may dissolve a corporation:
. . .
(2) In a proceeding by a shareholder if it is established that:
. . .
(b) The directors or those in control of the corporation have acted or are acting in a manner that is illegal, oppressive or fraudulent, and irreparable injury to the corporation is threatened or being suffered by reason thereof . . . .

In their motion for summary judgment, Respondents focused on the second element, irreparable injury. They argued that the lack of irreparable injury is dispositive, but noted that the oppression element may present issues of fact. For purposes of summary judgment, the district court treated all of the alleged corporate actions as if they were illegal, oppressive or fraudulent. Generally, oppressive conduct includes actions that defeat the reasonable expectations held by minority shareholders. *See Landstrom*, 561 N.W.2d at 8 (where a shareholder "would be oppressed in a very real sense when others in the corporation seek to defeat those expectations and there exists no effective means of salvaging the investment."). Defeated reasonable expectations must be more than mere disappointment. *Id.* (quoting *Matter of Wiedy's Furniture Clearance Ctr.,* 487 N.Y.S.2d 901, 903 (N.Y. App. Div. 1985)).

1. Standard of Review

When reviewing an order for summary judgment, the standard of review for this Court is the same standard as that used by the district court in ruling on the

13

motion. Summary judgment is appropriate if 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. This Court exercises free review over questions of law.

*Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Electric*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)).

2. <u>The district court erred in its interpretation of the irreparable injury element of I.C. § 30-1-1430(2)(b).</u>

In its first Memorandum and Order, the district court informed Ron that he would have to present facts that show irreparable injury to the Corporation. The parties have since advanced several possible interpretations of irreparable injury and when that injury can be considered threatened. This Court exercises "free review over matters of statutory interpretation." *KGF Dev., LLC v. City of Ketchum*, 149 Idaho 524, 527, 236 P.3d 1284, 1287 (2010) (quoting *State v. Doe*, 147 Idaho 326, 327, 208 P.3d 730, 731 (2009)). "The interpretation of a statute 'must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.'" *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 37574-2010, 2011 WL 5375192, *3 (Nov. 9, 2011) (quoting *State v. Schwartz,* 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)).

      a. Definition of "Irreparable Injury"

The district court defined irreparable injury as "that injury which cannot be adequately compensated monetarily." This is similar to Black's Law Dictionary's definition, which defines irreparable injury as "an injury that cannot be adequately measured or compensated by money and is therefore often considered remediable by injunction." Black's Law Dictionary 856 (9th Ed. 2009). In defining the similar term "irreparable damage," this Court utilized the definition of irreparable injury found in Black's Law Dictionary. *See Utah Power & Light Co. v. Idaho Pub. Util. Comm'n*, 107 Idaho 47, 51, 685 P.2d 276, 280 (1984). The Respondents note the federal district court interpretation found in *Mennick v. Smith* defines irreparable injury "as an actual and concrete harm, or the imminent threat of an actual and concrete harm." No. CV08-161-S-BLW, 2009 WL 1783505, at *3 (D. Idaho 2009). Webster's Third Dictionary defines irreparable as

"impossible to make good, undo, repair, or remedy." *Webster's Third New International Dictionary, Unabridged Edition* 1196 (1971).

By eliminating monetary injury from the definition for irreparable injury, the definition used by the district court becomes unreasonable in the context of the entire statute. Monetary loss can constitute irreparable injury to a corporation if the money cannot be recovered. We find that the plain, usual, and ordinary interpretation of irreparable in I.C. § 30-1-1430(2) is any injury that is impossible to remedy or repair. *See Webster's Third New International Dictionary, Unabridged Edition* 1196 (1971).

b. Definition of "Threatened"

This Court must also determine when irreparable injury is being threatened. To define when irreparable injury is threatened, the district court looked to case law. In other contexts, threatened injury must be "real" and "imminent." *See Miller v. Ririe Joint Sch. Dist. No. 252*, 132 Idaho 385, 388, 973 P.2d 156, 159 (1999). Additionally, speculative injury does not constitute irreparable injury; a mere possibility is not enough. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988); s*ee also City of S. Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231, 238 (9th Cir. 1980) (where the potential exposure to civil liability was treated as speculative and not a threat of real or immediate irreparable injury.). Turning again to Black's Law Dictionary, threat is defined as a "communicated intent to inflict harm or loss on another . . . ." (9th Ed. 2009). In *Mennick*, the federal court held that injury is not irreparable if it is based on remote possibilities or mere speculation. 2009 WL 1783505, at *3. We agree with the trial court that "threatened," as it is used in I.C. § 30-1-1430(2), means a real and non-remote, non-speculative threat of injury.

Putting the elements together under the statute, irreparable injury is any impossible to repair injury that results from illegality, oppression, or fraud to the corporation and which is neither remote nor speculative, or it is being suffered.

3. <u>Ron's alleged facts establish that irreparable injury to the corporation is being threatened.</u>

In its dismissal of Count II, the district court focused on the irreparable injury to the corporation element of I.C. § 30-1-1430. Whether the claims constitute irreparable injury can be determined by applying the above mentioned definitions to Ron's factual assertions.

Per the discussion in Part II.A, *supra*, the transfer of corporate resources to Gertrude, rather than requiring her to redeem stock, may be seen as oppression to Ron. Additionally, any

15

sums not recovered from Gertrude would be an injury to the corporation. Most importantly, it is reasonable to believe that the roughly $600,000 in payments to Gertrude will not be recoverable because the payments were made to cover Gertrude's needs. If true, the allegations before this Court show that the money is not recoverable. For instance, if the facts show that the money given to Gertrude cannot be paid back, the transactions constitute irreparable injury.

The potential tax penalties and liability stemming from the Corporation's transactions represent a prospective harm to the corporation. As alleged in the expert testimony, the potential tax penalties are neither speculative nor remote, even though no pending audit or notification from a taxing authority has been made. Assuming the allegations are true, tax penalties are a foreseeable consequence of the corporate transactions. Because these alleged transactions are in furtherance of illegality and oppression to the corporation, they satisfy the statutory elements of I.C. § 30-1-1430(2)(b).

Ron's removal from the board of directors and the Corporation's unwillingness to employ Ron or declare larger dividends constitute harm to Ron individually. Since harm to the corporation is required, these claims do not satisfy the statute.

We hold that the loss of corporate value and the potential tax penalties alleged by Ron satisfies the statutory elements of I.C. § 30-1-1430(2)(b), and we vacate the district court's dismissal of Count II, the corporate dissolution claim.

**C. The district court abused its discretion by excluding pre-January 6, 2001 facts from discovery in this action.**

In its March 4, 2009 Memorandum and Order, the district court held that it would only consider events that took place after January 5, 2001. The order also stated that Respondents and their experts did not have to respond to interrogatories referencing events before January 6, 2001. In its second discovery memorandum, the district court refined the limitation, issuing a protective order that allowed pre-January 6, 2001 discovery only on events and transactions directly related to the mutual execution of promissory notes and on the corporate purchase of Gertrude's house. Ron appealed, arguing that pre-2001 discovery is essential to understanding the facts and events at issue.

1. Standard of Review

"Control of discovery is within the discretion of the trial court." *Jen-Rath Co. v. Kit Mfg. Co.*, 137 Idaho 330, 336, 48 P.3d 659, 665 (2002). The decision whether or not to grant a

16

protective order is discretionary and will not be overturned absent an abuse of that discretion. *Selkirk Seed Co. v. Forney*, 134 Idaho 98, 104, 996 P.2d 798, 804 (2000); *see* I.R.C.P. 26(c).

> To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason.

*Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008).

2. <u>The district court abused its discretion by excluding pre-January 6, 2001 facts from discovery.</u>

Unless otherwise limited by order of the court, in accordance with the Idaho Rules of Civil Procedure, parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action. I.R.C.P. 26(b)(1). The district court granted the Respondents' request for a protective order related to most discovery that preceded the dismissal of *McCann I*.

In applying the first part of the three part discretion test, the district court correctly perceived the issue as one of discretion. On the second and third parts, the district court based its decision, in part, on the language found in *McCann I* that opens the door for Ron to bring future claims for similar injuries that occur post-dismissal.[10] Here, the district court did not apply res judicata to the substantive claims. However, because the district court ruled that the claims filed in 2008 were the same type as those previously adjudicated, the court limited discovery to include only events that happened after *McCann I* was dismissed. "[I]nquiry into events and transactions occurring prior to January 6, 2001, does not appear reasonably calculated to lead to the discovery of admissible evidence."[11]

In Part II.A. *supra*, we held that *McCann I* does not apply to the claims presently before the court. By extension, some events and facts that pre-date *McCann I* are relevant to the present claims, so the protective order would disallow inquiry that is reasonably calculated to lead to the

---

[10]"Although the district court's determination that the dismissal would be with prejudice has not been directly challenged on appeal, we conclude that this dismissal would affect only the claims that Ron attempted to pursue in his complaint prior to the dismissal, and would not prevent him from properly asserting new, unresolved claims complying with I.C. § 30-1-742 that may arise following the order of dismissal." *McCann I*, 138 Idaho at 232, n.2, 61 P.3d at 589, n.2.

[11] It should be noted that the district court used pre-2001 facts in the March 5, 2010 Memorandum and Order, using the same rationale the Appellant used, and that the court rejected, in his August 6, 2009 motion to compel discovery. "Although the court indicated that it will only consider events occurring after the dismissal of the first case on January 5, 2001, it is necessary to look at the entire history of the financial transactions between the corporation and Mr. and Mrs. McCann, Sr., in order to gain some understanding of what has occurred since January, 2001."

discovery of admissible evidence. For that reason, we vacate the discovery orders that limited discovery to events after January 5, 2001.

**D. The district court did not err when it denied attorney fees to Respondents; Respondents are not entitled to an award of attorney fees on appeal.**

Upon entry of final judgment, Respondents sought costs as a matter of right and an award of attorney fees pursuant to I.C. § 30-1-746 and I.C. § 12-121. The district court awarded costs as a matter of right but denied Respondents' motion for attorney fees. On appeal, Respondents argue that the district court erred in denying attorney fees and that Ron's derivative action was commenced and maintained without reasonable cause. Respondents also request attorney fees on appeal under I.A.R. 40, I.A.R. 41, I.C. § 30-1-746(2) and I.C. § 12-121.

1. <u>The district court did not err when it denied Respondents' request for attorney fees under I.C. § 30-1-746.</u>

This Court has held that if a party fails to comply with the pre-litigation demand requirement of I.C. § 30-1-746[12], he or she has acted without reasonable cause and the defendant directors are entitled to an award of attorney fees. *Mannos v. Moss*, 143 Idaho 927, 937, 155 P.3d 1166, 1176 (2007). "An award of attorney fees under [I.C. § 30-1-746] is discretionary and should be subject to review and vacated only upon a showing of an abuse of discretion." *McCann I*, 138 Idaho at 238, 61 P.3d at 595.

Since we hold Count I states a claim for an individual rather than a derivative action, I.C. § 30-1-746 does not apply. We affirm the district court's denial of attorney fees under I.C. § 30-1-746.

2. <u>The district court did not err when it denied Respondents' request for attorney fees under I.C. § 12-121.</u>

---

[12] Idaho Code § 30-1-746 states, *inter alia*:

> On termination of the derivative proceeding the court may: . . .
>
> (2) Order the plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose; or
>
> (3) Order a party to pay an opposing party's reasonable expenses, including counsel fees, incurred because of the filing of a pleading, motion or other paper, if it finds that the pleading, motion or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and was interposed for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

"An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Mannos*, 143 Idaho at 937, 155 P.3d at 1176 (quoting *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003)). A district court's denial of fees under I.C. § 12–121 will not be overturned absent an abuse of discretion. *Chavez v. Barrus,* 146 Idaho 212, 225, 192 P.3d 1036, 1049 (2008).

The district court explained its denial of attorney fees in its Memorandum and Order Concerning Costs:

> Looking at the prosecution of the case as a whole, the court cannot say that the action was brought or pursued frivolously, unreasonably or without foundation. It is obvious that the court disagreed with [Ron]'s interpretation of the law with respect to what constitutes a derivative action in Count One and with respect to the nature of evidence necessary to show a triable issue of fact relating to irreparable harm to a corporation in Count Two. Nevertheless, the court is satisfied that the claims were brought *and* pursued in a good faith belief that the facts and the law, or an extension or modification of the law, supported [Ron]'s position.

(Emphasis in original.)

Attorney fees under I.C. § 12-121 are not warranted where a novel legal question is presented. *Campbell v. Kildew*, 141 Idaho 640, 651, 115 P.3d 731, 742 (2005). The interpretation of the irreparable injury element of I.C. § 30-1-1430(2)(b) is an issue of first impression for this court. Accordingly, we hold that the district court did not abuse its discretion in denying attorney fees under I.C. § 12–121.

3. Respondents are not entitled to an award of attorney fees on appeal.

Respondents ask for attorney fees on appeal under I.A.R. 40, I.A.R. 41, I.C. § 30-1-746(2) and I.C. § 12-121. Under I.C. § 12-121, "attorney fees will be awarded to the prevailing party when this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably or without foundation." *Koch v. Canyon Cnty.*, 145 Idaho 158, 163, 177 P.3d 372, 377 (2008). Since Ron prevailed on several claims, the appeal was not brought frivolously. We therefore deny Respondents' request for attorney fees on appeal.

### III. CONCLUSION

We find that Count I states an individual claim not subject to the written demand requirements of I.C. § 30-1-742 and therefore reverse its dismissal and remand to the district

court for further proceedings consistent with this opinion. Since *McCann I* does not apply, we hold that the previous discovery orders must be vacated.

On Count II, the alleged loss and inability to recover approximately $600,000 satisfies the threatened irreparable injury element of I.C. § 30-1-1430, and we reverse the district court's grant of summary judgment and remand.

We affirm the district court's denial of attorney fees and decline to award fees to either party on appeal. Costs on appeal awarded to Ron.

Justices EISMANN, J. JONES, HORTON and TROUT, Pro Tem, **CONCUR.**