# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51543

ANNE MARIE BEARDSLEE,

  Plaintiff-Respondent-
Cross Appellant,

v.

RATLIFF FAMILY LLC, NO. 1, an Idaho
limited liability company; SHERRY MUNDT,
LARRY MUNDT, JAMES V. RATLIFF, JR.,
and H. LORRAINE RATLIFF,

  Defendants-Appellants-
Cross Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, September 2025 Term

Opinion Filed: May 26, 2026

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Richard S. Christensen, District Judge.

The judgment of the district court is <u>vacated</u>, and the case is <u>remanded for further proceedings</u>.

Hawley Troxell Ennis & Hawley LLP, Boise, for Appellants, Ratliff Family LLC, No. 1. Tyler J. Anderson argued.

John F. Magnuson, Coeur d'Alene, for Respondent, Anne Marie Beardslee. John F. Magnuson argued.

---

BRODY, Justice.

This appeal arises from the district court's judgment ordering the judicial dissolution of a closely held limited liability company. The Ratliff family formed the Ratliff Family LLC, No. 1 ("Ratliff Family LLC" or "the Company") in 1997 to preserve and maintain a 675-acre working ranch in Kootenai County, Idaho (the "Ranch"). Ratliff Family LLC's operating agreement provided that no member could seek judicial dissolution. At that time, a waiver of the right to seek dissolution was still enforceable under Idaho law. That changed in 2015 when the Idaho Legislature repealed the Idaho Limited Liability Company Act that was in effect when the Ratliff Family LLC was formed (former Idaho Code sections 53-601 to 53-672) and replaced it with the Idaho Uniform Limited Liability Company Act at Idaho Code sections 30-25-101, *et seq.*

1

("Uniform LLC Act"). Among other changes, the Uniform LLC Act provides that "[a]n operating agreement may not . . . [v]ary the causes of dissolution specified in section 30-25-701(a)(4), Idaho Code[.]" I.C. § 30-25-105(c)(9).

In 2020, Anne Marie Beardslee, one of the original members of the company, filed suit against Ratliff Family LLC and a number of its members (collectively, the "Defendants"), seeking judicial dissolution of the Company under Idaho Code section 30-25-701(a)(4)(C)(ii) (the "oppressive conduct provision") on the grounds that the managers were engaging in oppressive conduct. In response, Defendants sought to preclude her claim under the dissolution waiver provision of the operating agreement. However, the district court determined the waiver was unenforceable under the more recently enacted Uniform LLC Act. Following a bench trial, the district court ordered judicial dissolution pursuant to Idaho Code section 30-25-701(a)(4)(C)(i) (the "illegal acts provision"), on the grounds that Ratliff Family LLC's managers were acting "in a manner that is illegal" by refusing to correct longstanding county ordinance violations on the Ranch.

On appeal, the Defendants challenge the district court's decision on multiple grounds. First, they argue the district court erred by concluding that the waiver was unenforceable. Second, they argue that Beardslee's complaint did not request dissolution under the illegal acts provision and, therefore, the district court erred by ordering dissolution on a claim that was not pleaded. Beardslee cross-appeals, arguing the district court erred by applying the wrong legal standard when it evaluated her claim for judicial dissolution pursuant to Idaho Code section 30-25-701(a)(4)(C)(ii) based on the managers' oppressive conduct toward her. For the reasons set forth below, we vacate the judgment of the district court and remand for reconsideration of Beardslee's oppression claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

James Ratliff, Sr. ("Jim, Sr.") and Lorraine Ratliff owned approximately 675 acres along Mica Creek in Kootenai County, south of Coeur d'Alene ("the Ranch"). The Ranch consists of nine contiguous parcels, which are used for grazing cattle, hay production, and timber harvesting. The Ranch has been the home for various Ratliff family members for more than 60 years. Jim, Sr., and Lorraine Ratliff have six children, including Anne Marie Beardslee and Sherry Mundt and James Ratliff, Jr. ("Jim, Jr."). At all material times, the owners and occupants of the four homes

on the Ranch consisted of Jim, Sr. and Lorraine Ratliff; Jim, Jr., and Patty Ratliff; Sherry and Larry Mundt; and Anne and Al Beardslee.

In 1997, Jim, Sr. and Lorraine formed the Ratliff Family LLC as an organizational and estate planning entity to facilitate continued family ownership and control over the Ranch. Pertinent here, the Ratliff Family LLC operating agreement states that, "[f]or so long as the Company shall exist, each Member waives the right to compel a dissolution of the Company or to compel a partition of the property of the Company." Jim, Sr. and Lorraine offered each of their children membership interests in Ratliff Family LLC or a cash payout. The operating agreement was signed by Beardslee, Beardslee's then-husband Steven M. Mills (since divorced), Jim, Jr., Sherry, and Larry.

In 2002, Larry constructed a cabin on the Ranch with the assistance of Beardslee and other family members. Larry did not, however, obtain a county permit for the cabin. Roughly 11 years later, in 2013, the Kootenai County Community Development Department sent two notices of ordinance violations to the Ratliff Family LLC, which were recorded against the property by the department on October 21, 2013. One violation, issued on September 3, 2013, was for failing to obtain approval and a permit for a single-family residence pursuant to Kootenai County Building Code Ordinance No. 450, Title 7, Chapter 1, Kootenai County Code. The second violation, issued two days later, was for having more than one single family dwelling on site pursuant to Kootenai County Zoning Ordinance No. 401, Title 9, Kootenai County Code. The district court determined in its memorandum decision that "[t]hese violations [were] continuing in nature and will remain in effect and are an encumbrance on the Ranch property, notably the parcel where [Beardslee]'s residence is located."

In 2006, issues arose between the members concerning the workings of the Ranch. To resolve these issues, Jim, Sr. and Lorraine, Larry and Sherry, and Beardslee and her husband, Al, entered into an agreement. This agreement is entitled the "Ratliff Family L.L.C. #1 Agreement" (hereafter, "2006 Agreement"), which required the Mundts, who own and raise cattle on the Ranch, to (1) maintain the Ranch's fencing at their expense, (2) procure worker's compensation insurance for certain employees of the Ranch, (3) provide information to other members regarding grants for improvements to the Ranch prior to applying for the grants, and (4) assume responsibility for any expenses related to the grants. Relatedly, the Mundts would be entitled to any profits resulting from the grants.

Thereafter, in June 2012, Jim, Sr. and Lorraine entered into an agreement with the Mundts, which granted the Mundts the right to log, build roads, and maintain the Ranch property for a period of five years. Then, two years later, Jim, Sr. and Lorraine extended the term of the agreement until June 1, 2034. Neither Beardslee nor her husband signed these agreements.

On January 11, 2018, Beardslee attended a Company meeting. During the meeting, Jim, Sr. and Lorraine granted Beardslee permission to record the meeting. Also, during the meeting, Beardslee indicated that she no longer wanted to be a member of the Company and wanted to be bought out of her position. However, no offer of a buyout was made by either Beardslee or the other members. Thereafter, Jim, Sr., Lorraine, Sherry, and Jim, Jr. prepared meeting minutes, which stated that Beardslee "proceeded to record the meeting without Jim, Sr.'s knowledge." No future meetings were conducted, and one month later, Jim, Sr. and Lorraine appointed Jim, Jr. and Larry as joint managers.

At the end of April 2020, Beardslee underwent surgery and informed Ratliff Family LLC's managers by email that she needed rest during her recovery. She requested that they not stage or transport livestock past Beardslee's house via Mica Creek Road. Mica Creek Road runs within a few feet of Beardslee's house and has historically been used for transporting cattle and timber through the Ranch. In a letter responding to the email, the managers threatened to file a civil complaint for declaratory judgment, preliminary and permanent injunctions, and judicial expulsion of Beardslee from the Company.

## B. Procedural Background

About six months after the managers threatened to file suit, Beardslee filed a complaint seeking dissolution and a winding up of Ratliff Family LLC pursuant to Idaho Code section 30-25-701(a)(4)(C). Section 30-25-701(a)(4)(C) authorizes the district court to dissolve an LLC, on application by a member, when "[t]he managers or those members in control of the company: (i) [h]ave acted, are acting, or will act in a manner that is illegal or fraudulent; or (ii) [h]ave acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant[.]" In her complaint, Beardslee alleged "the Company's Managers or those Members in control of the Company have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful" to her. Beardslee alleged in pertinent part that the managers acted in a manner to vex, harass, and annoy her by directing the logging and livestock management operations within feet of her home and by excluding her from profiting from Ratliff Family LLC's assets. Of particular

4

relevance to this appeal, her complaint did not allege that dissolution was warranted due to any illegal conduct by the Company's managers.

Defendants subsequently moved for summary judgment on each of Beardslee's claims, arguing in pertinent part that Beardslee had waived her right to seek statutory dissolution and failed to present sufficient evidence of oppressive conduct by the managers of Ratliff Family LLC. In response, Beardslee argued, for the first time, that the managers were acting illegally by failing to correct the outstanding county ordinance violations associated with the construction of the cabin and, therefore, dissolution was warranted under section 30-25-701(a)(4)(C)(i). In their reply brief, Defendants objected to this claim, arguing that Beardslee improperly sought to avoid summary judgment by raising a new, unpleaded claim and that Beardslee's nine-year delay in raising this issue gave rise to laches, waiver, and statute of limitations defenses. They also argued Beardslee's new theory failed to raise a genuine dispute of material fact because she failed to explain why the violations should serve as a basis to dissolve the Company.

The district court denied Defendants' motion for summary judgment. The court determined that Beardslee's claim for dissolution based on illegal conduct was properly before the court because Beardslee's complaint sought dissolution under section 30-25-701(a)(4)(C) without specifying either subsection (i) or (ii). The district court also rejected Defendants' argument that her claim concerning the ordinance violations should be dismissed due to laches, waiver, or the statute of limitations after concluding that Defendants' argument lacked specificity and citations to legal authority. Next, the district court held that genuine issues of material fact precluded summary judgment on Beardslee's claims for dissolution under either the illegal conduct or oppressive conduct provision of section 30-25-701(a)(4)(C).

While the case was pending, in February 2023, Larry and Jim, Jr., as managers, along with Sherry, produced and signed a spreadsheet titled, "Ratliff LLC Capitol [sic] Account 2022" (hereafter "Capital Account spreadsheet"), which purported to list official acts of Ratliff Family LLC and its outstanding debt to its various members. Notably, the Capital Account spreadsheet purported to obligate Ratliff Family LLC to pay certain members for expenditures allegedly incurred even before Ratliff Family LLC was created. Beardslee was offered the opportunity to provide information regarding her capital contributions but declined to do so.

Following a bench trial, the district court ordered dissolution pursuant to Idaho Code section 30-25-701(a)(4)(C)(i) solely on the basis of "illegality" in connection with the two

5

ordinance violations. The district court rejected Beardslee's claim for dissolution on the basis of oppressive manager conduct. First, with respect to cattle or timber operations that took place near Beardslee's home, the district court determined that the evidence did not show that these operations were intended to vex, harass, and annoy her. The court noted that Beardslee located her home "in very close proximity to" "the most practical route to remove logs" "that had existed on the property for decades" and that she had rejected efforts to mitigate the nuisance, such as installing a sprinkler system to limit dust generation. The district court further remarked that she "effectively moved to the nuisance" created by the cattle operations and that "[t]he relatively short temporal aspect of the cattle operation near [Beardslee's] house on a yearly basis, though perhaps not pleasant, is not great or burdensome."

Next, the district court rejected Beardslee's argument that the mangers engaged in oppressive conduct by signing the Capital Account spreadsheet. While acknowledging that "some entries certainly . . . raised [a] brow as to the veracity or integrity of the claimed credit," the district court determined that the entries were not "oppressive[,]" remarking that the issue could have been handled by a claim for accounting (which was not requested) and Beardslee was "invited to present any credits she may have claimed but did not respond to such invitation." Finally, the court rejected Beardslee's argument that the managers engaged in oppressive conduct by allegedly failing to abide by the 2006 Agreement, directing animus at her during the January 11, 2018, Company meeting, and drafting inaccurate meeting minutes. The district court found that these matters were irrelevant, unfounded, or were not repetitive actions that would substantiate a finding of oppression.

Defendants filed motions for reconsideration and to amend or make additional findings based on post-trial evidence that the notices of violation had been addressed by the Defendants through the dismantling of the cabin after trial. The district court denied the Defendants' motion, holding that the demolition of the cabin following trial did not touch on the correctness of its decision. The Defendants appealed, and Beardslee cross-appealed.

## II.  STANDARDS OF REVIEW

"Following a bench trial, this Court's review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 168 Idaho 358, 363–64, 483 P.3d 415, 420–21 (2021) (quoting *Wilson v. Mocabee*, 167 Idaho 59, 64, 467 P.3d 423, 428 (2020)). "[T]his Court

6

exercises free review over matters of law and is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Miller v. Rocking Ranch No. 3 Prop. Owners' Ass'n, Inc.*, 173 Idaho 359, 364, 541 P.3d 1279, 1284 (2024) (alteration in original) (quoting *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019)).

### III.    ANALYSIS

**A. The district court correctly applied section 30-25-105(c)(9) of the Uniform LLC Act to preclude Defendants' waiver defense.**

Defendants contend the district court erroneously concluded that section 30-25-105(c)(9) of the Uniform LLC Act rendered Beardslee's waiver of the right to judicial dissolution unenforceable. Defendants do not challenge the district court's substantive interpretation of section 30-25-105(c)(9), but, rather, contend the law cannot be applied here. First, they argue that the district court erred by retroactively applying the anti-waiver provision of Idaho Code section 30-25-105(c)(9) to an operating agreement that was executed in 1997 because the Uniform LLC Act does not contain an express declaration of retroactivity. Second, they argue that the waiver should remain enforceable under freedom of contract principles. Each argument is addressed in turn.

*1. The district court correctly determined that the Uniform LLC Act governed this dispute pursuant to Idaho Code section 30-25-110(b).*

The district court determined that, regardless of the Company's founding date in 1997, as of July 1, 2017, the Uniform LLC Act applied to all existing limited liability companies, pursuant to Idaho Code section 30-25-110(b). Therefore, Beardslee's 1997 waiver of her right to seek dissolution was precluded because Idaho Code section 30-25-105(c), a part of the Uniform LLC Act, prohibits such waivers. Section 30-25-105(c) states: "An operating agreement may not: . . . [v]ary the causes of dissolution specified in section 30-25-701(a)(4), Idaho Code[.]" I.C. § 30-25-105(c)(9). Defendants argue that the district court misinterpreted section 30-25-110(b) because the statute does not contain an express declaration of retroactivity but instead indicates that the Uniform LLC Act was to be phased in over time and "on a purely prospective basis[.]" They emphasize that, while section 30-25-110(b) states that it "governs" all LLCs, this does not "supplant[] all prior law applicable to LLCs[,]" because "[i]f the [l]egislature intended such a result, it needed to expressly declare that intention." Therefore, they argue, Beardslee's waiver remains valid under the original Idaho Limited Liability Company Act (formerly Idaho Code sections 53-601 to 53-672). Defendants' interpretation of section 30-25-110 is untenable.

This Court's standards for statutory interpretation are well understood:

Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020) (citation omitted).

"In general, legislation acts prospectively." *Guzman v. Piercy*, 155 Idaho 928, 937, 318 P.3d 918, 927 (2014) (citing *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 601, 448 P.2d 209, 215 (1968)). "Retrospective or retroactive legislation is not favored." *Id.* (quoting *Winans v. Swisher*, 68 Idaho 364, 367, 195 P.2d 357, 359 (1948)); *see also Schoorl v. Lankford*, 161 Idaho 628, 629, 389 P.3d 173, 174 (2017) ("Retroactive legislation is only that which affects vested or already existing rights." (citation modified)). "As such, 'a well-settled and fundamental rule of statutory construction' is to construe statutes to have a prospective rather than retroactive effect." *Guzman*, 155 Idaho at 937, 318 P.3d at 927 (quoting *Winans*, 68 Idaho at 367, 195 P.2d at 359). Likewise, Idaho Code section 73-101 provides that "[n]o part of these compiled laws is retroactive, unless expressly so declared." I.C. § 73-101. "Thus, in Idaho, a statute is not applied retroactively unless there is clear legislative intent to that effect." *Guzman*, 155 Idaho at 937–38, 318 P.3d at 927–28 (internal quotations omitted) (quoting *Gailey v. Jerome County*, 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987)). However, the legislature does not need to state, "this statute is to be deemed retroactive[.]" *Id.* at 938, 318 P.3d at 928 (quoting *Peavy v. McCombs*, 26 Idaho 143, 151, 140 P. 965, 968 (1914)).

It is sufficient if the enacting words are such that the intention to make the law retroactive is clear. In other words, if the language clearly refers to the past as well as to the future, then the intent to make the law retroactive is expressly declared within the meaning of [Idaho Code section] 73-101.

*Id.* (citation modified).

Idaho Code section 30-25-110 of the Uniform LLC Act governs when its provisions became effective:

(a) Before July 1, 2017, this chapter governs only:

    (1)   A limited liability company formed on or after July 1, 2015; and

    (2)   Except as otherwise provided in subsection (c) of this section, a limited

8

liability company formed before July 1, 2015, that elects, in the manner provided in its operating agreement or by law for amending the operating agreement, to be subject to this chapter.

(b) Except as otherwise provided in subsection (c) of this section, *on and after July 1, 2017, this chapter governs all limited liability companies*.

(c) For purposes of applying this chapter to a limited liability company formed before July 1, 2008:

(1) The company's articles of organization are deemed to be the company's certificate of organization; and

(2) For purposes of applying section 30-25-102(a)(7), Idaho Code, and subject to section 30-25-107(d), Idaho Code, language in the company's articles of organization designating the company's management structure operates as if that language were in the operating agreement.

I.C. § 30-25-110 (emphasis added).

Here, under the plain language of section 30-25-110(b), the Uniform LLC Act governs "all limited liability companies" on and after July 1, 2017. While section 30-25-110(a) certainly contemplated an initial phase-in period for LLCs formed before July 1, 2015, the statute plainly provides that the Uniform LLC Act governs *all* LLCs on or after July 1, 2017. Accordingly, we conclude that the district court did not err by applying section 30-25-105(c)(9) of the Uniform LLC Act to preclude Defendants' waiver defense.

> 2. *We decline to decide whether the Uniform LLC Act's application in this case violates freedom of contract principles.*

Defendants contend that the waiver clause should remain enforceable under freedom of contract principles because the existing law at the time the operating agreement was executed "g[a]ve maximum effect to the principle of freedom of contract . . . ." (Quoting I.C. § 53-668(1) (1994) (repealed eff. Jul. 1, 2010)). Furthermore, the then-existing law stated that future amendments would not "impair the obligations of any contract existing when . . . any amendments . . . go into effect" or "affect any . . . right accrued before" the effective date of any amendments to Idaho's LLC laws. I.C. § 53-668(4) (1994) (repealed eff. Jul. 1, 2010).

Defendants' argument potentially raises a constitutional question concerning the freedom of contract and the Uniform LLC Act's impairment of the members' contractual rights. "Operating agreements are contracts." *Dorsey v. Dorsey*, 172 Idaho 667, 682, 535 P.3d 1040, 1055 (2023) (quoting *Nelsen v. Nelsen*, 170 Idaho 102, 134, 508 P.3d 301, 333 (2022)). "Freedom of contract is a fundamental concept underlying the law of contracts and is an essential element of the free

9

enterprise system." *Vaughan v. Gateway Parks, LLC*, ___ Idaho ___, ___, 573 P.3d 142, 146 (2025) (quoting *Morrison v. Nw. Nazarene Univ.*, 152 Idaho 660, 661, 273 P.3d 1253, 1254 (2012)).

In this case, however, we decline to address whether the Uniform LLC Act impermissibly impaired Defendants' contractual rights. "This Court will not consider an argument not supported by cogent argument or authority." *City of Meridian v. Petra Inc.*, 154 Idaho 425, 450, 299 P.3d 232, 257 (2013) (citation omitted). Although Defendants referenced "freedom of contract principles" in their opening brief, Defendants' argument was cursory and they did not analyze whether the Uniform LCC Act's application impaired their contractual rights under the two-step test set forth by the United States Supreme Court in *Sveen v. Melin*, 584 U.S. 811, 819 (2018). Instead, Defendants cited to two unpublished cases from Delaware, *R&R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*, No. 3803-CC, 2008 WL 3846318 (Del. Ch. Aug. 19, 2008) (unpublished), and *Huatuco v. Satellite Healthcare*, No. 8465-VCG, 2013 WL 6460898 (Del. Ch. Dec. 9, 2013) (unpublished), for the proposition that "there is support outside Idaho for allowing LLC members to waive the right to seek dissolution, based on a freedom of contract theory." However, these cases are inapposite for two reasons: first, both are unpublished opinions from a sister state. As such, they carry little weight. Second, even if we consider the law of Delaware, it is unlike Idaho's Uniform LLC Act. Delaware's LLC Act does not prohibit waivers of the right to dissolution and it explicitly provides that "[i]t is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." *R & R Cap., LLC*, 2008 WL 3846318, at *4 (alteration in original) (quoting Del. Code Ann. tit. 6, § 18-1101(b)); *see also Huatuco*, 2013 WL 6460898, at *6 (quoting Del. Code Ann. tit. 6, § 18-1101(b)).

Therefore, even though this case potentially raises an important constitutional question concerning the application of the Uniform LLC Act to an operating agreement that existed prior to its effective date, it is not an appropriate case to address it because Defendants have failed to provide this Court with cogent argument or adequate legal authority. *Petra Inc.*, 154 Idaho at 450, 299 P.3d at 257. Accordingly, we decline to consider whether the application of the Uniform LLC Act unconstitutionally interfered with the members' freedom of contract.

**B. The district court erred when it determined Beardslee properly raised a claim for dissolution based on the managers' illegal conduct.**

10

Defendants raise several arguments challenging the district court's judgment dissolving Ratliff Family LLC under Idaho Code section 30-25-701(a)(4)(C)(i) based on the illegal conduct of its managers. However, we decline to address many of those issues because we agree with Defendants that Beardslee never pleaded a claim for dissolution pursuant to section 30-25-701(a)(4)(C)(i), and the district court erred when it ordered dissolution on that basis.

Idaho Code section 30-25-701(a)(4)(C) authorizes the court to order judicial dissolution of an LLC on application by a member on two alternative grounds. The first ground is established when "[t]he managers or those members in control of the company . . . [h]ave acted, are acting, or will act in a manner that is *illegal or fraudulent*[.]" I.C. § 30-25-701(a)(4)(C)(i) (emphasis added). The second ground is established when "[t]he managers or those members in control of the company . . . [h]ave acted or are acting in a manner that is *oppressive and was, is, or will be directly harmful to the applicant*[.]" I.C. § 30-25-701(a)(4)(C)(ii) (emphasis added).

In her complaint, Beardslee requested an order of dissolution pursuant to Idaho Code section 30-25-701(a)(4)(C), alleging that "the Company's Managers or those Members in control of the Company have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to [Beardslee] as the applicant." After Defendants moved for summary judgment on this claim, Beardslee argued in response, for the first time, that dissolution was warranted under section 30-25-701(a)(4)(C)(i) due to the "illegality" of the ordinance violations issued in 2013.

In denying Defendants' summary judgment motion, the district court initially framed the issue as whether Beardslee "set forth sufficient information to place the Defendants on notice as to all the grounds for dissolution or only those set forth in [section] 30-25-701(a)(4)(C) or just under (C)(ii)." However, the district court never resolved that issue. Instead, it simply concluded that it "need only consider whether [Beardslee] has produced evidence supporting [her] claims for the reasons set forth under [section] 37-25-701(a)(4)(C)." Thereafter, at every juncture, the Defendants renewed their objection to trying the case on illegality grounds.

On appeal, Defendants argue that the district court erred when it concluded Beardslee alleged a claim for dissolution based on illegality under section 30-25-701(a)(4)(C)(i), and, therefore, also erred when it allowed Beardslee to proceed to a bench trial on this claim. While recognizing that Beardslee cited section 30-25-701(a)(4)(C) in her complaint, Defendants argue they lacked notice of any claim under subsection 30-25-701(a)(4)(C)(i) because Beardslee's complaint never referenced the ordinance violations or made any reference to illegal conduct by

11

the managers or members in control. Furthermore, Beardslee only claimed that dissolution was appropriate because the managers acted "in a manner that is oppressive" and only alleged facts in support of the alleged oppression. In response, Beardslee argues that her complaint satisfied Idaho's notice-pleading requirements because the complaint generally cites section 30-25-701(a)(4)(C), which includes section 30-25-701(a)(4)(C)(i). We agree with Defendants that Beardslee did not plead a claim for dissolution based on illegal conduct.

Rule 8(a) of the Idaho Rules of Civil Procedure sets forth the pleading standard in Idaho, providing that litigants must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" I.R.C.P. 8(a)(2). This Court has stated that such pleadings should be construed liberally so as to secure a just, speedy and inexpensive resolution of the case. *Villa Highlands, LLC v. W. Cmty. Ins. Co.*, 148 Idaho 598, 601, 226 P.3d 540, 543 (2010) (internal quotation marks omitted). "To reach a just result, "[o]ur Rules of Civil Procedure establish a system of notice pleading." *Id.* (alteration in original) (quoting *Youngblood v. Higbee*, 145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008)). "[T]he focus of this standard," and the "key issue in determining the validity of a complaint[,] is whether [an] adverse party is put on notice of the claims brought against it," "rather than a detailed legal analysis[.]" *Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 300–01, 520 P.3d 708, 712–13 (2022) (citations omitted). "Courts should make every intendment to sustain a complaint that contains a concise statement of the facts constituting the cause of action and a demand for relief." *Id.* at 301, 520 P.3d at 713 (citation modified).

Beardslee failed to set forth a concise statement of facts in her complaint constituting a cause of action for dissolution under section 30-25-701(a)(4)(C)(i). While this Court has not addressed the elements for judicial dissolution claims under section 30-25-701(a)(4)(C)(i), it is axiomatic that this claim would necessarily include an allegation that the managers or those members in control of the company engaged in some specific illegal activity. Yet, Beardslee's complaint never referenced the ordinance violations or any other conduct of the managers that was "illegal." Instead, Beardslee alleged various instances of oppressive conduct by managers throughout her complaint and included a general citation to Idaho Code section 30-25-701(a)(4)(C), followed by conclusory language mirroring that contained in section 30-25-701(a)(4)(C)(ii) (i.e, "the Company's Managers or those Members in control of the Company have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to

[Beardslee] as the applicant"). Beardslee's complaint only provided notice that she was pursuing a claim for dissolution under section 30-25-701(a)(4)(C)(ii).

Beardslee contends that Defendants were on notice of her claim under section 30-25-701(a)(4)(C)(i) at least a year prior to trial and, even though Defendants moved in limine to exclude documentation of the ordinance violations, Defendants eventually stipulated to their admission as exhibits. It is unclear, however, whether Beardslee is arguing that (1) Defendants' notice of the issue prior to the bench trial excused any deficiency in her pleadings, or (2) that Defendants' stipulation to the admission of the ordinance violation documents as exhibits established that Defendants gave their implied consent to litigate this issue pursuant to Idaho Rule of Civil Procedure 15(b)(2). In either event, Beardslee has not presented this Court with a cogent argument supported by legal authority. *See Petra Inc.*, 154 Idaho at 450, 299 P.3d at 257 ("This Court will not consider an argument not supported by cogent argument or authority." (citation omitted)). Moreover, Beardslee's argument does not grapple with the fact that the district court overruled Defendants' objection to argument and evidence on this unpleaded claim during the summary judgment proceedings and subsequently scheduled a bench trial so that this claim could be adjudicated.

For these reasons, we conclude that Beardslee failed to allege facts sufficient to support a claim for judicial dissolution under Idaho Code section 30-25-701(a)(4)(C)(i) and, therefore, the district court erred when it allowed Beardslee to proceed to a bench trial on this unpleaded claim. Accordingly, we vacate the judgment of the district court.

## C. The district court erred in dismissing Beardslee's claim for dissolution for oppressive conduct under section 30-25-701(a)(4)(C)(ii) because it applied the wrong legal standard.

On cross appeal, Beardslee contends the district court improperly rejected her application to dissolve the LLC under section 30-25-701(a)(4)(C)(ii) on the ground of oppressive conduct by the managers. Beardslee does not challenge any of the district court's factual findings. Instead, she argues that the district court's findings of fact establish that the managers' conduct towards her establish that she was oppressed as a matter of law because the conduct (1) demonstrates a lack of fair dealings in the affairs of the Company to her detriment, and (2) defeated her reasonable expectations as the largest equity holder in the Company. Therefore, she argues the district court was also required to order dissolution under section 30-25-701(a)(4)(C)(ii). For the reasons set forth below, we conclude that the district court applied an incorrect legal standard when evaluating

13

Beardslee's oppression claim. Accordingly, we reverse the decision of the district court and remand the case for further proceedings consistent with this decision.

Before addressing the merits of the district court's decision, we must clarify the appropriate standard for evaluating an application for judicial dissolution under section 30-25-701(a)(4)(C)(ii). As set forth above, section 30-25-701(a)(4)(C)(ii) authorizes a court, on application of a member, to judicially dissolve an LLC on the grounds that the "managers or those members in control of the company . . . [h]ave acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant[.]" I.C. § 30-25-701(a)(4)(C)(ii). The legislature did not define the term "oppressive," however, and we have not yet had occasion to interpret it in this context. "Where the legislature has not provided a definition in the statute, terms in the statute are given their common, everyday meanings." *Edwards v. Idaho Transp. Dep't*, 165 Idaho 592, 596, 448 P.3d 1020, 1024 (2019) (citation omitted). Sometimes, "we turn to dictionary definitions 'to ascertain the ordinary meaning of an undefined term in a statute.'" *Id.* at 597, 448 P.3d at 1025 (alterations omitted) (quoting *Arnold v. City of Stanley*, 158 Idaho 218, 221, 345 P.3d 1008, 1011 (2015)). However, "'[o]ppressive' is a broad term" that "has multiple meanings, depending on the circumstances." *Ritchie v. Rupe*, 443 S.W.3d 856, 866–67 (Tex. 2014).

As a general matter, state courts have adopted one of two competing standards for evaluating oppression claims that arise in dissolution proceedings for various other business entities: the reasonable expectations test and the fair dealings test. *See, e.g.*, *McCann v. McCann*, 152 Idaho 809, 819, 275 P.3d 824, 834 (2012) (construing former version of the judicial dissolution statute applicable to Idaho general business corporations, I.C. § 30-1-1430 (repealed 2015), and stating that oppressive conduct in the corporate context generally "includes actions that defeat the reasonable expectations held by minority shareholders" (citation omitted)); *Hirchak v. Hirchak*, 331 A.3d 1051, 1061 (Vt. 2024); *Noel v. Pathology Med. Servs., P.C.*, 26 N.W.3d 196, 212 (Neb. 2025); *Scott v. Trans-Sys., Inc.*, 64 P.3d 1, 6 (Wash. 2003) (en banc); *Gimpel v. Bolstein*, 477 N.Y.S.2d 1014, 1018–19 (N.Y. Sup. Ct. 1984); *see also Manere v. Collins*, 241 A.3d 133, 153 (Conn. App. Ct. 2020) (compiling cases). The majority of states have adopted the "reasonable expectations" test, which examines whether the "conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the petitioner's decision to join the venture." *Hirchak*, 331 A.3d at 1061 (first quoting *Straka v. Arcara Zucarelli Lenda & Assocs. CPAs, P.C.*, 92 N.Y.S.3d 567, 573 (N.Y. Sup. Ct. 2019); then citing

*Manere*, 241 A.3d at 154; and then citing 16A *Fletcher Cyclopedia of the Law of Corporations* § 8046.10 (2024)).

> Stated another way, reasonable expectations are those "of which *all investors* shared a basic understanding at the inception of the venture and that, objectively viewed, w[ere] reasonable under the circumstances." Such expectations must be balanced against the need for flexibility to run a business in a productive manner. Frustration of subjective hopes and desires will not alone trigger relief.

*Noel*, 26 N.W.3d at 212 (alteration in original) (internal citations omitted).

In contrast, the "fair dealings" test examines whether the majority members have engaged in

> burdensome, harsh and wrongful conduct, a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members, or a visible departure from the standards of fair dealing and a violation of fair play on which every shareholder who entrusts money to a company is entitled to rely.

*Hirchak*, 331 A.3d at 1061 (quoting 16A *Fletcher Cyclopedia of the Law of Corporations* § 8046.10 (2024)) (remaining citation omitted).

The Official Comment to section 701 of the Revised Uniform Limited Liability Company Act, which is the model act for Idaho Code section 30-25-701(a)(4)(C), clarifies the proper standard for evaluating whether an LLC manager's or controlling member's conduct is oppressive. It explains that oppression "equates to or at least includes the frustration of the plaintiff's reasonable expectations[,]" and that those expectations, in most situations, should be reflected in the LLC's operating agreement:

> The act does not define "oppressively," but "oppression" is a concept well-grounded in the law of close corporations. *See, e.g.*, *Kiriakides v. Atlas Food Sys. & Servs., Inc.*, 541 S.E.2d 257, 264–66 (S.C. 2001); Robert B. Thompson, *The Shareholder's Cause of Action for Oppression*, 48 BUS. LAW. 69, 70 (1993) (referring to then "evolving cause of action of shareholder oppression"). In many jurisdictions the concept equates to or at least includes the frustration of the plaintiff's reasonable expectations. *Baur v. Baur Farms, Inc.*, 832 N.W.2d 663, 670 (Iowa 2013) (stating that "perhaps the most widely adopted [approach] links oppression to the frustration of the reasonable expectations of the corporation's shareholders"). . . .
>
> Courts have extrapolated close corporation doctrine to unincorporated organizations. . . .
>
> However, applying close corporation law to limited liability companies requires some caution. Close corporation law developed in part because the standard corporate governance structure exalts majority power and does not presuppose contractual relationships among the shareholders.

> In contrast, while an LLC depends on the sovereign for legal existence and the all-important liability shield, LLC governance is fundamentally contractual. Therefore, in most situations, the operating agreement should reflect and comprise members' reasonable expectations.

Unif. Ltd. Liab. Co. Act § 701 cmt (Unif. L. Comm'n, am. 2013) (first alteration in original). The Official Comment further sets forth five factors a court should consider when evaluating whether an expectation invoked by a member is reasonable:

> [A] court considering a claim of oppression by an LLC member should consider, with regard to each reasonable expectation invoked by the plaintiff, whether the expectation: (i) contradicts any term of the operating agreement or any reasonable implication of any term of that agreement; (ii) was central to the plaintiff's decision to become a member of the limited liability company or for a substantial time has been centrally important in the member's continuing membership; (iii) was known to other members, who expressly or impliedly acquiesced in it; (iv) is consistent with the reasonable expectations of all the members, including expectations pertaining to the plaintiff's conduct; and (v) is otherwise reasonable under the circumstances.

*Id.* Thus, when considering a claim of oppression by an LLC member, a court should evaluate whether (1) the expectation invoked by the plaintiff was reasonable under the five factors set forth above, and (2) whether the manager's (or those members in control of the company) actions frustrated those expectations.

In this case, however, the parties did not address, and the district court did not apply, the reasonable expectations test when evaluating Beardslee's oppression claim. Rather, during the bench trial, the district court employed the fair dealings test to evaluate this claim. Because the wrong test was applied, we vacate the judgment and remand this matter to the district court for reconsideration under the correct test.

**D. We will report the typographical error in Idaho Code section 30-25-701(b) to the Governor as a defect in the law as required by the Idaho Constitution.**

On a final note, while we certainly agree with the special concurrence that the district court *should* have the discretion to order a remedy other than dissolution, the plain language of Idaho Code section 30-25-701(b) gives the district court that alternative authority only when the basis for dissolution is that it is not reasonably practicable for the LLC to carry on its activities in accordance with the certificate of organization and the operating agreement. Looking at the legislative history of this statute, it is clear that a typographical error occurred when the Idaho Legislature adopted Idaho Code section 30-25-701(b). Contrary to the special concurrence, we will not use principles of equity to fix it. The Idaho Constitution requires this Court to report the

error to the Governor, and it is up to the Idaho Legislature to fix it. Idaho Const. art. V, § 25 ("[T]he justices of the Supreme Court shall, on or before the first day of December of each year, report in writing to the governor, to be by him transmitted to the legislature, together with his message, such defects and omissions in the Constitution and laws as they may find to exist.").

Section 30-25-701 enumerates the events that cause the dissolution of a limited liability company. It is important to read that statute as a whole:

(a) A limited liability company is dissolved, and its activities and affairs must be wound up, upon the occurrence of any of the following:

(1) An event or circumstance that the operating agreement states causes dissolution;

(2) The affirmative vote or consent of all the members;

(3) The passage of ninety (90) consecutive days during which the company has no members unless before the end of the period:

(A) Consent to admit at least one (1) specified person as a member is given by transferees owning the rights to receive a majority of distributions as transferees at the time the consent is to be effective; and

(B) At least one (1) person becomes a member in accordance with the consent;

(4) On application by a member, the entry by the district court of an order dissolving the company on the grounds that:

(A) The conduct of all or substantially all the company's activities and affairs is unlawful; or

(B) It is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement; or

(C) The managers or those members in control of the company:

(i) Have acted, are acting, or will act in a manner that is illegal or fraudulent; or

(ii) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant; or

(5) The signing and filing of a statement of administrative dissolution by the secretary of state under section 30-21-602, Idaho Code.

(b) In a proceeding brought under subsection (a)(4)(B) of this section, the court may order a remedy other than dissolution.

I.C. § 30-25-701.

Section 30-25-701 is divided into two subsections. Subsection (a) sets forth the grounds for dissolution, and subsection (b) sets forth the alternative remedy that is at issue here. Paragraph (4) of subsection (a) governs actions for judicial dissolution. Broadly stated, judicial dissolution actions fall into two categories. The first category involves actions in which the member seeks dissolution because the *company's* activities are illegal or not in conformity with its governing documents. I.C. § 30-25-701(a)(4)(A) and (B). The second category of cases involves actions in which the member seeks dissolution because a *manager's* conduct is illegal or oppressive. I.C. § 30-25-701(a)(4)(C)(i) and (ii). Beardslee has sued under section 30-25-701(a)(4)(C)(ii) to dissolve the Company based on the managers' alleged oppressive conduct.

If the district court determines on remand that: (1) the managers have acted or are acting in a manner that is oppressive; and (2) the conduct was, is, or will be directly harmful to Beardslee, then it must enter an order dissolving the company and dissolution will be effective upon entry. I.C. § 30-25-701(a) ("A limited liability company *is* dissolved, and its activities and affairs *must* be wound up, upon the occurrence of any of the following[.]") The statute does not give the district court any discretion as to the remedy that is ordered once it makes those two determinations. We draw that conclusion because of the presence of subsection (b) which gives the district court alternative remedy discretion, but that discretion, by its express terms, only applies in an action brought under subsection (a)(4)(B), the provision governing dissolution actions where the company's activities are not in conformance with its governing documents.

The special concurrence characterizes subsection (b) as "a doubtful implication:"

> Here, section 30-25-701(a)(4) sets forth the standards for seeking judicial dissolution of an LLC, but it neither clearly nor obviously abrogates any common law. At most, the statute explicitly authorizes courts to consider alternative remedies in proceedings under subsection (a)(4)(B). *This alone does not establish more than a doubtful implication that the legislature wished to preclude equitable principles from supplementing Idaho Code section 30-25-701(a)(4)(C).*

Meyer, J., special concurrence, *infra*, at 25 (emphasis added). We disagree. The special concurrence's interpretation effectively writes subsection (b) out of the statute. The logical extension of the special concurrence's analysis is that the district court has the discretion to fashion an equitable remedy short of dissolution in any of the four types of judicial dissolution cases authorized by the statute. If that is the case, then what purpose does subsection (b) serve? None. If subsection (b) did not exist, we might agree with the conclusion that the district court has discretion to order alternative remedies in an oppression case. But subsection (b) does exist, and we must

18

give it effect. "When determining the plain meaning of a statute, 'effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.'" *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 897, 265 P.3d 502, 510 (2011) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)). Unfortunately, giving subsection (b) effect means limiting the district court's alternative remedy discretion to cases where a company's activities are not in conformance with its governing documents.

We use the word "unfortunately" with intention because we are convinced there is a typographical error in subsection (b) and that the alternative remedy provision should be available in cases like this one involving allegations of oppressive conduct. The special concurrence correctly points out that, as it is presently written, subsection (b) is inconsistent with the Revised Uniform Limited Liability Company Act, which Idaho adopted in 2015. The relevant portions of section 701 of the Revised Uniform Act provide:

> (a) A limited liability company is dissolved, and its activities and affairs must be wound up, upon the occurrence of any of the following:
>
> . . . .
>
> (4) on application by a member, the entry by [the appropriate court] of an order dissolving the company on the grounds that:
>
>> (A) the conduct of all or substantially all the company's activities and affairs is unlawful
>>
>> (B) it is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement; or
>>
>> (C) the managers or those members in control of the company:
>>
>>> (i) have acted, are acting, or will act in a manner that is illegal or fraudulent; or
>>>
>>> (ii) have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant; . . .
>
> . . . .
>
> (b) *In a proceeding brought under subsection (a)(4)(C), the court may order a remedy other than dissolution.*

Unif. Ltd. Liab. Co. Act § 701 (Unif. L. Comm'n, am. 2013) (emphasis added). Under the Revised Uniform Act, subsection (b) grants the trial court alternative remedial discretion in cases like this one, where the member alleges that the managers have engaged in illegal or oppressive conduct.

When the Idaho Legislature adopted section 701 in 2015, there was an obvious typographical error in subsections (a)(4)(B) and (b). The statute as adopted read in part:

(a) A limited liability company is dissolved, and its activities and affairs must be wound up, upon the occurrence of any of the following:

. . . .

(4) On application by a member, the entry by the district court of an order dissolving the company on the grounds that:

(A) The conduct of all or substantially all the company's activities and affairs is unlawful; or

(B) It is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement;

*(i) Have acted, are acting, or will act in a manner that is illegal or fraudulent; or*

*(ii) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant; or*

(C) The managers or those members in control of the company:

*(i) Have acted, are acting, or will act in a manner that is illegal or fraudulent; or*

*(ii) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant; or*

. . . .

(b) In a proceeding brought under subsection *(a)(4)(B)* of this section, the court may order a remedy other than dissolution.

Act of Apr. 3, 2015, ch. 243, § 49, 2015 Idaho Sess. Laws 750, 891 (emphasis added). The drafters mistakenly included the illegal and oppressive conduct criteria under both subsections (a)(4)(B) and (a)(4)(C). The alternative remedy provision in subsection (b) also incorrectly referenced (a)(4)(B) instead of (a)(4)(C).

Two years later, the legislature recognized there was an error in the statute and passed legislation to correct it:

This legislation corrects a drafting error that occurred when section 302-5-701, Idaho Code was adopted in 2015. This section of Idaho's Limited Liability Company (LLC) statute relates to the dissolution of an LLC. The current statute includes language in both subsections (4)(B) and (4)(C) that should be included only in subsection (4)(C). As a consequence, the legislation strikes the duplicate and incorrect language in subsection (4)(B).

Statement of Purpose, S.B. 1091, 64th Idaho Leg., 1st Sess. (2017), https://tinyurl.com/mv5ka6bd; *see* Act of Mar. 20, 2017, ch. 100, 2017 Idaho Sess. Laws 248. Unfortunately, the legislation only eliminated the duplicate language in subsection (a)(4)(b), but it did not fix the incorrect internal reference in subsection (b):

> (a) A limited liability company is dissolved, and its activities and affairs must be wound up, upon the occurrence of any of the following:
>
> . . . .
>
> (4) On application by a member, the entry by the district court of an order dissolving the company on the grounds that:
>
> > (A) The conduct of all or substantially all the company's activities and affairs is unlawful; or
> >
> > (B) It is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement;
> >
> > > (i) Have acted, are acting, or will act in a manner that is illegal or fraudulent; or
> > >
> > > (ii) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant; or
> >
> > (C) The managers or those members in control of the company:
> >
> > > (i) Have acted, are acting, or will act in a manner that is illegal or fraudulent; or
> > >
> > > (ii) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant; or
>
> . . . .
>
> (b) In a proceeding brought under subsection (a)(4)(B), the court may order a remedy other than dissolution.

Act of Mar. 20, 2017, ch. 100, 2017 Idaho Sess. Laws 248 (strikeouts in original).

The special concurrence correctly points out that corporate dissolution is a drastic remedy, and the discretion to fashion a remedy other than dissolution is vitally important. This discretion is particularly important in a case like this one, where the Ratliff family agreed nearly 30 years ago to waive the right to seek judicial dissolution in the event of a dispute, but that agreement is no longer enforceable by operation of Idaho's new LLC laws. Having said that, it simply is not the role of this Court to rewrite the statute through judicial interpretation:

> Importantly, this Court applies an unambiguous law as written: "[i]f the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Montierth v. Dorssers-Thomsen*, 173 Idaho 100, 102, 539 P.3d 578,

21

590 (2023) (quoting *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)). That is because, "[i]f this Court were to conclude that an unambiguous statute was palpably absurd, how could we construe it to mean something that it did not say? Doing so would simply constitute revising the statute, but we do not have the authority to do that." *Verska*, 151 Idaho at 895, 265 P.3d at 508. As we have explained, rewriting a statute is the province of the legislature: "The legislative power is vested in the senate and house of representatives, Idaho Const. art. III, § 1, not in this Court." *Id.*

*Labrador v. Idaho State Bd. of Educ.*, 174 Idaho 790, 815, 560 P.3d 533, 558 (2024). Instead, the Idaho Constitution requires this Court to report the defect to the Governor who will then advise the Idaho Legislature and provide his recommendation. Idaho Const. art. V, § 25 ("[T]he justices of the Supreme Court shall, on or before the first day of December of each year, report in writing to the governor, to be by him transmitted to the legislature, together with his message, such defects and omissions in the Constitution and laws as they may find to exist."). We cannot take it upon ourselves to fix this mistake. That authority belongs to the Idaho Legislature.

### IV.   CONCLUSION

Accordingly, we vacate the judgment of the district court and remand the case for reconsideration of the oppressive conduct claim. Because each of the parties has partially prevailed on appeal, we decline to award costs.

Chief Justice BEVAN, and Justices MOELLER and ZAHN CONCUR.


MEYER, J., specially concurring.

Although I generally concur with the Court's opinion, I write separately to emphasize that Idaho's Uniform Business Organization Code (UBOC), codified at Idaho Code sections 30-21-101 to 30-31-901, and the Idaho Uniform Limited Liability Company Act (Uniform LLC Act), codified at Idaho Code sections 3-25-101 to 30-25-806, do not clearly abrogate principles of equity applicable to the dissolution of Idaho limited liability companies.

As set forth above, Idaho Code section 30-25-701 provides in pertinent part:

(a) A limited liability company is dissolved, and its activities and affairs must be wound up, upon the occurrence of any of the following:

. . . .

(4) On application by a member, the entry by the district court of an order dissolving the company on the grounds that:

. . . .

(B) It is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement; or

(C) The managers or those members in control of the company:

(i) Have acted, are acting, or will act in a manner that is illegal or fraudulent; or

(ii) Have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant[.]

. . . .

(b) In a proceeding brought under subsection (a)(4)(B) of this section, the court may order a remedy other than dissolution.

I.C. § 30-25-701(a)(4)(C) and (b).

To begin, I acknowledge that dissolution is the only remedy discussed in section 30-25-701(a)(4) for a manager's wrongful actions. And, oddly, the statute only expressly permits a district court to consider alternative remedies to dissolution in proceedings where "[i]t is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement[,]" I.C. § 30-25-701(a)(4)(B), which is inconsistent with section 30-25-701(a)'s counterpart in the Revised Uniform Limited Liability Company Act (RULLCA). Unif. Ltd. Liability Co. Act § 701 (Unif. L. Comm'n, am. 2013) (permitting courts to consider alternative remedies to dissolution in proceedings under subsection (a)(4)(C), not (a)(4)(B)). This creates an inference that the legislature intended to require courts to dissolve an LLC if the court determines that grounds have been established under section 30-25-701(a)(4)(C), as Beardslee contends.

As the Court explained in Subsection III(D), "it is clear that a typographical error occurred when the Idaho Legislature adopted Idaho Code section 30-25-701(b)." Majority Op., *supra*, at 17. However, I disagree with the view that, as written, a court *must* dissolve an LLC if it determines that grounds have been established under section 30-25-701(a)(4)(C). The flaw in this interpretation is that it reads section 30-25-701(a)(4) in isolation instead of in the context of the UBOC and Uniform LLC Act.

"The UBOC is, first and foremost, an organizational statute, bundling multiple uniform business entity acts together into one title of the Idaho Code." *Citizens Against Linscott/Interstate Asphalt Plant v. Bonner Cnty. Bd. of Comm'rs*, 168 Idaho 705, 712, 486 P.3d 515, 522 (2021). The UBOC includes the Uniform LLC Act, which was based on the 2006 Revised Uniform

23

Limited Liability Company Act, as amended in 2013. *See* Act of Apr. 3, 2015, ch. 243, §§ 43–50, 2015 Idaho Sess. Laws 750, 871–97. Pertinent here, the UBOC states that "[u]nless displaced by particular provisions of this act, the principles of law and equity supplement this act." I.C. § 30-21-702. The Uniform LLC Act also incorporates the principles of law and equity contained in section 30-21-702: "[t]he following subjects are covered outside this chapter: . . . (11) [s]upplemental principles of law – section 30-21-702, Idaho Code." I.C. § 30-25-111(11). Taken together, sections 30-21-702 and 30-25-111(11) plainly operate to supplement the Uniform LLC Act with "the principles of law and equity" unless these principles are displaced by statute.

There is a dearth of caselaw in Idaho concerning the equitable principles involved in dissolution proceedings for limited liability companies under the common law. However, it is widely recognized that judicial dissolution of a business entity implicates equity. *See Belt v. Belt*, 106 Idaho 426, 432–33, 679 P.2d 1144, 1150–51 (Ct. App. 1984) ("[W]e recognize that corporate dissolution proceedings are fundamentally equitable in nature . . . ."); *Henry George & Sons, Inc. v. Cooper-George, Inc.*, 632 P.2d 512, 516–17 (Wa. 1981) (en banc) (same); *Schmid v. Simmons*, 970 N.W.2d 735, 746 (Neb. 2022) (action for dissolution of an LLC is "primarily equitable in nature"); *Barkalow v. Clark*, 959 N.W.2d 410, 418 (Iowa 2021) (same); *Gagne v. Gagne*, 459 P.3d 686, 697 (Colo. App. 2019) (same); *Robertson v. Jacobs Cattle Co.*, 830 N.W.2d 191, 199 (Neb. 2013) (action for partnership dissolution sounds in equity).

"When one party is seeking recovery in equity, the trial court is vested with discretion in determining the equities between the parties." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018) (citation modified). "As a general principle, the trial court is granted broad discretion in fashioning equitable relief." *Id.* (quoting *Rowe v. Burrup*, 95 Idaho 747, 750, 518 P.2d 1386, 1389 (1974)); *see also Coupounas v. Morad*, 380 So. 2d 800, 803 (Ala. 1980) ("It is also clearly inherent in the very nature of equity proceedings that the trial court is authorized to mold its decree so as to adjust the equities of all parties and to meet the obvious necessities of each situation.").

"[W]e have long held '[i]t is not to be presumed that the [l]egislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention.'" *Smallwood v. Little*, ___ Idaho ___, ___, 583 P.3d 149, 155 (2026) (first quoting *Cox v. St. Anthony Bank & Tr. Co.*, 41 Idaho 776, 779, 242 P. 785, 785 (1925);

and then citing *McCann v. McCann*, 152 Idaho 809, 818, 275 P.3d 824, 833 (2012)). "As a general principle, 'the rules of common law are not to be changed by doubtful implication. However, where the implication is obvious it cannot be ignored.'" *McCann*, 152 Idaho at 818, 275 P.3d at 833 (quoting *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011), *abrogated on other grounds by*, *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 895, 265 P.3d 502, 508 (2011)). Here, section 30-25-701(a)(4) sets forth the standards for seeking judicial dissolution of an LLC, but it neither clearly nor obviously abrogates any common law. At most, the statute explicitly authorizes courts to consider alternative remedies in proceedings under subsection (a)(4)(B). This alone does not establish more than a doubtful implication that the legislature wished to preclude equitable principles from supplementing Idaho Code section 30-25-701(a)(4)(C).

Based on these equitable principles, I conclude that a trial court is not required to dissolve an LLC if it finds that an applicant has established oppression for purposes of section 30-25-701(a)(4)(C)(ii). Instead, in my reading of the UBOC and Uniform LLC Act, the court must first determine the equities of LLC members and fashion relief to meet the needs of each situation, which may include dissolution. Because "[d]issolution . . . is a drastic remedy[,] [it] should be invoked with extreme caution and only when justice requires it." *McCann*, 152 Idaho at 819, 275 P.3d at 834. "In some circumstances, dissolution may be a disproportionate and inadequate remedy." *Id.* Thus, in my view, even if the district court on remand finds that there was oppressive conduct as alleged by Beardslee, the district court should then determine whether principles of equity weigh in favor of dissolution or against it.